## REARDON v. HIGGINS, ADMINISTRATOR.

[No. 5,769.   Filed October 31, 1906.   Motion to modify denied
January 16, 1907.]

1. REPLEVIN.—*Possession.*—*Unlawful Detention.*—The gist of
the action of replevin is defendant's unlawful detention of the
plaintiff's property.   p. 367.

2. SAME. — *Defenses.* — *Special Right of Possession.* — A special
right of possession is a good defense to an action in replevin,
though plaintiff is the owner of the property.   p. 368.

3. LIENS.—*Equitable.*—*Personalty.*—*Pledging as Security by
Oral Executory Contracts.*—An oral executory contract to de-
liver to defendant a certain horse at a certain time to be held
as security for a certain debt constitutes an equitable lien upon
such horse enforceable against the contractor, his heirs, per-
sonal representatives or voluntary assignees.   p. 368.

4. REPLEVIN. — *Counterclaim.*—*Contracts.*—A counterclaim set-
ting up an equitable lien created by contract may be pleaded
in an action of replevin, a liberal construction of such action
being adopted for the interest of justice.   p. 369.

5. SAME.—*Counterclaim.*—*Equitable Liens.*—In an action for the
replevin of a horse, a counterclaim for the foreclosure of an
equitable lien thereon lies under the code (§353 Burns 1901,
§350 R. S. 1881).   p. 369.

6. PLEADING.—*Judgment.*—*Effect on.*—The form of judgment
finally rendered in a cause has no effect on the rights of the
parties as to their pleadings.   p. 370.

7. REPLEVIN. — *Unlawful Detention.* — *Receiving Property from
Bailee.*—Defendant's securing of plaintiff's horse from plain-
tiff's liveryman, without plaintiff's consent, and subsequent de-
tention thereof, does not constitute defendant's present posses-
sion unlawful, where he has an equitable lien upon such horse.
p. 370.

8. LIENS.—*Liveryman's.*—*Assignability.*—*Right of Possession.*—
*Statutes.*—A liveryman's lien, as provided by §7254 Burns 1901,
§5292 R. S. 1881, is not assignable so as to give the assignee
the right of possession of the property cared for.   p. 371.

9. CONTRACTS. — *Specific Performance.* — *Replevin.* — *Equitable
Liens.*—Where plaintiff agreed to give defendant a certain horse
at a certain time as security for a certain debt, and he
failed to do so, defendant cannot compel specific performance of
such contract, nor can he replevy such horse, but he can have a
lien declared.   p. 371.

10.  PLEADING. — *Cross-Complaint.* — *Counterclaim.* — Though a pleading is styled a cross-complaint, it will be considered as a counterclaim where its allegations show it to be such.  p. 372.

11.  JUDGMENT. — *Form of.* — *Replevin.* — *Equitable Liens.*—The decree, in an action in replevin and a counterclaim of an equitable lien, should be for the defendant for the amount of his interest and upon payment thereof for the return of the property.  p. 372.

From Marion Circuit Court (12,029) ; *Henry Clay Allen,* Judge.

Action by David A. Higgins, as administrator of the estate of Hugh F. Adams, deceased, against Michael H. Reardon.  From a judgment for plaintiff, defendant appeals.  *Reversed.*

*Alonzo G. Smith, Bernard Korbly* and *Edenharter & Mull,* for appellant.

*T. S. Adams* and *N. M. Taylor,* for appellee.

COMSTOCK, P. J.—David A. Higgins, guardian of Hugh F. Adams, a person of unsound mind, commenced this action in replevin against Michael H. Reardon to recover possession of a horse, and damages for its detention. The ward died pending the suit, and the administrator, Higgins, was substituted as plaintiff.

The complaint is in two paragraphs.  The first alleges that David A. Higgins, the duly appointed guardian of Hugh F. Adams, a person of unsound mind, as such guardian complains of Michael H. Reardon, the defendant, and says that plaintiff's said ward is the owner, and entitled to the immediate possession, of one bay horse, about seven years old, known as and named St. Patrick, of the value of $4,000, and which horse the defendant wrongfully took possession of without right and unlawfully detains from the plaintiff.  The second alleges, in substance, that plaintiff's ward is the owner, and entitled to the immediate possession, of one bay pacing horse, about seven years old, generally known as and named St. Patrick, of the value of $4,000, which horse the defendant unlawfully

detains from the plaintiff. Each paragraph demands judgment for the possession of the horse and damages for $1,000. Higgins filed his affidavit as required by §1287 Burns 1901, §1267 R. S. 1881, claiming the immediate delivery of said horse to him as guardian. Afterwards a writ of replevin was issued, directed to the sheriff of Marion county, Indiana, and the return of the sheriff thereon shows that he took the horse into his possession; that the defendant failed to file bond within the time prescribed by law; that the plaintiff filed a good and sufficient bond within the time prescribed by law, and that said horse was thereupon delivered by the sheriff to the plaintiff. To the first and second paragraphs of complaint the defendant answered by general denial. The defendant filed an amended cross-complaint, to which a demurrer was sustained. Upon the issues formed upon the complaint, and the answer in general denial thereto, the cause was submitted to the court, and, upon the request of defendant, a special finding of facts was made and conclusions of law stated thereon, and judgment rendered in favor of plaintiff, that he recover of the defendant the property described in the complaint and one cent damages for the detention of said property, together with costs and charges. To the conclusions of law the defendant at the time excepted. The errors relied on for reversal are the action of the court in sustaining the demurrer of appellee to the amended cross-complaint of appellant, and in the conclusions of law upon the special finding of facts.

Said cross-complaint alleges that on or about August 1, 1901, a certain oral agreement was entered into between the cross-complainant and Hugh F. Adams, whereby the cross-complainant agreed to furnish money to said Adams from time to time during the horse-racing season of 1901, for the purpose of enabling Adams to ship his race-horse, known as St. Patrick, to various race-courses throughout the country and to pay for the feeding and care of said

horse on said trips; that Adams, in consideration of the advances to be so made by cross-complainant, agreed that said horse should be security for the same, and that he (Adams) would, at the end of said horse-racing season, ship said horse to the cross-complainant at Indianapolis, to be held as security for the money so advanced; that if said advancements were not paid within a reasonable time after said racing season said horse should be sold and cross-complainant should reimburse himself out of the proceeds of said sale. Cross-complainant says that in pursuance of said agreement he advanced to said Adams divers sums of money, amounting in all to $663.50, for said purpose; that said Adams, at the end of said racing season, in violation of his said agreement with cross-complainant and without his consent, shipped said horse to Danville, Indiana, the home of said Adams, instead of shipping him to cross-complainant at Indianapolis, in accordance with the terms of said agreement; that afterwards, to wit, in the month of December, 1901, cross-complainant demanded of said Adams the repayment of the money so advanced under said agreement; that said Adams neglected and failed to pay said money, or any part thereof, whereupon the cross-complainant demanded of him the possession of said horse; that afterwards, without the knowledge or consent of cross-complainant, said Adams turned said horse over to Frank McVay, for the purpose of having him fed, cared for, and trained—said McVay being in the business of feeding, caring for and training horses; that said McVay, pursuant to his agreement with said Adams, shipped said horse to his stables at Indianapolis, and there cared for and trained him for a period of about four months; that, upon learning that said horse was in Indianapolis at said McVay's stable, cross-complainant informed said McVay of his right to the custody of said horse by virtue of said agreement, and demanded possession thereof, but said McVay refused to deliver said horse to said cross-complainant

until the charges for feeding, caring for and training said horse should be paid him; that cross-complainant, thereupon on August 26, 1902, paid said McVay the amount of his claim, to wit, $104, and took from said McVay a written assignment of his said claim, and that said cross-complainant is and ever since has been the owner of said claim; that said McVay, at the same time delivered the possession of said horse to cross-complainant; that by the purchase of said McVay's claim for the purpose stated the cross-complainant became and is subrogated to the rights of said McVay thereunder; that cross-complainant thereafter held the possession of said horse by virtue of the facts alleged herein, until the same was taken from him in this action; that the debt owing from said Adams to him, arising out of said agreement, and the claim assigned to him by said McVay, are due and wholly unpaid, and he says that by reason of the facts alleged, a lien upon said horse exists in his favor in the sum of $767.50, with interest thereon, and that he is entitled to the possession of said horse until said lien shall have been paid. He asks the court to declare a lien in his favor on said horse in the amount of $767.50 and interest, and asks that he have judgment for the possession of said horse. He further prays that his lien be foreclosed, and for a decree ordering the sale of said horse to satisfy his said lien and for all other proper relief. McVay filed his answer to the amended cross-complaint, admitting the allegations thereof, and that he had no claim or interest in the horse involved in said cause of action, and had no claim or interest whatever in the account assigned by him to Michael H. Reardon, the complainant, as alleged in said cross-complaint.

This action is for the possession of personal property. The gist of the action is necessarily its unlawful detention. The question presented under the counter-

1. claim and under the special finding of facts (for the averments of the counterclaim are specially

found to be true) is whether appellant had the right to the possession of the horse, St. Patrick, when it was taken from him by virtue of the writ of replevin.

A special right of possession is a good defense. Such interest is entitled to the same protection as an
2. absolute interest. Cobbey, Replevin (2d ed.), §815; *Mitchell* v. *Hinman* (1832), 8 Wend. 667.

Appellant claims, as his special right, an equitable lien in consideration of the verbal promise made by its owner to deliver to him the horse as security for the re-
3. payment of the money advanced to said owner by the appellant. Upon the subject of equitable liens we quote from 3 Pomeroy, Eq. Jurisp. (3d ed.), §1235: "The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. * * * But the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done." The learned author further says that in order that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, identifying it or so describing it that it can be identified and must indicate with sufficient clearness an intent that the property so described is to be held, given or transferred as security for the obligation. Citing numerous cases, among them the following: *Knott* v. *Shepherdstown Mfg. Co.*

(1888), 30 W. Va. 790, 5 S. E. 266; 3 Pomeroy, Eq. Jurisp. (3d ed.), §1235. See, also, 6 Lawson, Rights, Remedies and Practice, §3094. The averments of the amended cross-complaint and the facts specially found are within the conditions and requirements set out by Pomeroy, and give to appellant an enforceable, equitable lien.

Counsel for appellee insist that, for numerous reasons, the rulings of the trial court were correct. These reasons we will consider. (1) Replevin is an action sounding in tort. The law does not permit a counterclaim based upon a contract to be pleaded to a complaint based upon a tort. As a general rule, the proposition is correct, but "suits in replevin are said to be in some respects *sui generis,* and the inclination of the courts has been to give them a flexibility sufficient to meet exigencies and adjust all equities arising in such actions." Cobbey, Replevin (2d ed.), §15. The action of replevin "should be liberally construed in the interest of justice." Cobbey, Replevin (2d ed.), §13. *Hickman* v. *Dill* (1888), 32 Mo. App. 509; *Boutell* v. *Warne* (1876), 62 Mo. 350; *Barney* v. *Brannan* (1883), 51 Conn. 175.

(2) The contract set forth in the counterclaim did not arise out of, nor was it connected with, the cause of action within the meaning of the statute defining a counterclaim. Section 353 Burns 1901, §350 R. S. 1881, reads: "A counterclaim is any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages." "The cause of action, as it appears from the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute defendant's delict or act of wrong." Pomeroy, Remedies and Remedial Rights, §453. Appellee's primary right is the right to pos-

session. The first duty of appellant was not unlawfully to detain the horse from appellee. The counterclaim sets up facts so connected with the subject of the action that equity requires that the matter alleged in the complaint and in the counterclaim be settled in one litigation. *Brown* v. *Phillips* (1868), 3 Bush (Ky.). 656, was an action in replevin to recover possession of a horse, upon which Brown held a chattel mortgage. Brown set up the chattel mortgage, and asked that it be foreclosed. The court said, whether the cause of action be the mare or the taking of her by Brown, yet the mortgage and his claim thereunder are connected with it. See, also, *Thompson* v. *Keesel* (1864), 30 N. Y. 383; Bliss, Code Pl., §375a, p. 574. Besides, the plaintiff demands damages for unlawful detention. The claim of appellant would tend, if established, to reduce appellee's damages. *Lapham* v. *Osborne* (1888), 20 Nev. 168, and cases cited.

6. The fact that the court awarded only nominal damages would not affect the rule of pleading.

Appellee contends that the conclusion of law was correct, because appellant, in taking possession of the horse, committed a tort, and that his subsequent detention was

7. unlawful. We think that the plaintiff should not recover in this action, unless defendant's detention was unlawful. The manner by which he obtained possession would not determine his right thereto. The owner of the property having, for a consideration paid to him, agreed to give to appellant the possession of the horse as security for money advanced, his representative ought not now be heard to complain of appellant's action in claiming his right under the agreement. If the manner of getting' possession of the property was unlawful, no demand for its return, before the bringing of the suit, was necessary. If possession had been taken by violence, appellant would be liable in trespass, but not in an action for possession. The

present right to possession was the question to be determined. It is the rule that a man cannot recapture his own property when such recapture must endanger the peace of society. It is not necessary to decide whether appellee had the right to take possession of the horse. Being in possession; the question at issue was, as between the parties to the action, who had the right of possession? Appellant had performed his part of the agreement. Had the owner of the horse transferred him to the custody of the appellant, there could have been no question as to appellant's right to hold it as security for his claim. It goes without saying that the owner should have delivered the horse in the performance of his agreement.

Appellee insists that the special findings did not show that McVay was a liveryman, or that he held a liveryman's lien on the horse, and that if he did that lien was not assignable. Without setting out the findings we deem it sufficient to say that this court has held in *Glascock* v. *Lemp* (1901), 26 Ind. App. 175, that the lien which §7254 Burns 1901, §5292 R. S. 1881, gives to a livery-stable keeper upon animals fed and cared for by him cannot be assigned to another so as to preserve a lien and right to possession of the property in favor of the assignee. Appellant's right in this cause is not that of an assignee. He is the original holder of an equitable lien. That appellant did not bring suit to enforce his lien is not a matter of which appellee can complain.

It is agreed by appellee that appellant could not have successfully prosecuted a suit for the specific performance of the contract, and that he could not have maintained an action in replevin for the horse, because that would have been but another method of enforcing specific performance. To have found as a conclusion of law that appellant was entitled to his lien as claimed, would not necessarily have required the owner of the property or his representative to perform his contract,

but it would have been the exercise of power in the court to do equity between the parties. In *Beck* v. *Indianapolis, etc., Power Co.* (1905), 36 Ind. App. 600, the power of the court is construed and many cases are cited. *Dilworthy* v. *McKelvy* (1860), 30 Mo. 149, is pertinent as to the judgment to be rendered in a case of this character.

On its face, the pleading to which the demurrer was sustained is styled a cross-complaint; in the brief of counsel it is treated as a counterclaim. We have considered it a counterclaim, because its allegations determine its character.

Appellant ought not to be compelled to litigate his claim in an independent action, under the facts found. When the money due him under his original claim is paid, his lien ceases. The judgment should be for the value of the defendant's interest or for a return of the property, until the value is paid at the option of the appellee.

Judgment reversed, with instructions to overrule appellee's demurrer to the amended cross-complaint, and for other proceedings not inconsistent with this opinion.