# WESTMINSTER INVESTMENT COMPANY v. McCURTAIN.

No. 2217.   Decided September 27, 1911.   On Application for Rehearing, November 7, 1911 (118 Pac. 564).

1. TRIAL—ISSUES OF FACT AND LAW—FINDINGS OF FACT—JUDGMENT. In replevin for an automobile, defendant pleaded that the machine had been delivered to him for repair, and that the value of the repairs was $281, and that he had a lien for such amount conferred by Comp. Laws 1907, section 1404, and was entitled to the possession until his lien was satisfied.   The court found as facts only that plaintiff was the owner of the machine; that its value was $750; that defendant wrongfully withheld it after demand; that plaintiff had been damaged by the detention in the sum of ten dollars; that all the allegations of plaintiff's complaint and reply were true; and that all the allegations and denials of defendant's answer and cross-complaint were untrue. *Held*, that such findings were mere conclusions, and insufficient to dispose of defendant's affirmative defense, and insufficient to sustain a judgment for plaintiff.   (Page 546.)

### ON APPLICATION FOR REHEARING.

2. APPEAL AND ERROR—EQUITY SUIT—SCOPE OF REVIEW—FINDINGS ON APPEAL.   Under Comp. Laws 1907, sections 2968, 2969, providing that an answer may contain a statement of any new matter constituting a defense or counterclaim, and defining a counterclaim, where plaintiff brought replevin for an automobile and defendant denied plaintiff's right to possession, claiming a lien for repairs, the case thereby became an equitable one, so that on appeal the Supreme Court could make findings in accordance with the evidence and direct what judgment should be entered, or might remand the cause with directions to make findings of fact and conclusions of law in accordance with its directions.   (Page 550.)

3. LIENS—LABORER'S LIEN—REPAIRS ON PERSONAL PROPERTY.   Comp. Laws 1907, section 1404, provides that any person who shall repair or bestow labor on any personal property at the request of the owner shall have a lien thereon for his labor and for any materials furnished in making such repair.   *Held*, that, where plaintiff's agent took plaintiff's automobile to a garage for repairs, believing that the repairs would be made by S., but the repairs were made by defendant, S. testifying that he had no interest therein, the implied contract to pay defendant for the repairs was sufficient to sustain defendant's lien; no express contract for the repairs being necessary.   (Page 554.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Replevin by the Westminster Investment Company against Frank McCurtain.

Judgment for plaintiff. Defendant appeals.

Reversed and remanded with directions.

*M. M. Warner* for appellant.

*Gustin, Gillette, Davis & Brayton* for respondent.

FRICK, J.

Respondent, a corporation, brought this action in claim and delivery to recover the possession of its automobile which it alleged appellant wrongfully detained from it. The complaint is in the usual form in such cases. Appellant filed an answer wherein he admitted respondent's corporate capacity, and that it was the owner of the automobile, and coupled therewith he added a general denial of all other allegations contained in the complaint. He further answered, and, as an affirmative defense, he, in substance, averred that the respondent on a day named by him had delivered the automobile in question to him as a mechanic to have the same repaired; that he (appellant) had received said automobile as such mechanic, and that he, at the request of respondent, had furnished certain material and had bestowed labor upon said automobile to repair the same and that he did repair the same, and that said material and labor so furnished and bestowed in repairing said automobile was of the reasonable value of $281; that appellant had notified respondent that he had completed the repairs on said automobile, and that the material furnished and labor bestowed by appellant upon the same were of the value of $281, and that he claimed a lien on said automobile for said amount; that no part of said amount had been paid to him; and that by reason of the premises he claimed a lien on said automobile as aforesaid and prayed judgment awarding him possession thereof. Respondent in

39 Utah—35

a reply, in effect, denied the affirmative matter set forth in the answer, and alleged that the repairs referred to were made by another, and were not worth more than forty dollars.

Upon substantially the foregoing issues, the case was tried to the court without a jury. The court, after finding that respondent is a corporation, which was admitted, further found: "That plaintiff is the owner and entitled to the immediate possession of one certain four-cylinder, five-passenger touring car automobile, known as the 'Ford Model B' No. 241, of the value of $750; that defendant herein wrongfully and unlawfully withholds and detains said automobile and personal property from the possession of the plaintiff herein; that demand was made by said plaintiff upon said defendant for the possession thereof prior to the institution of this action, but that, notwithstanding said demand, said defendant unlawfully and wrongfully refuses to surrender the possession thereof, and still continues to wrongfully and unlawfully detain the same from the possession of plaintiff herein; that plaintiff has been damaged by reason of the failure of said defendant to deliver and surrender up possession of said automobile and personal property in the sum of ten dollars; that all the allegations of said plaintiff's complaint and all the allegations and denials of plaintiff's reply are true, and that all the allegations and denials of said defendant's answer and cross-complaint are untrue." These are all the facts found by the court. Upon these findings the court made conclusions of law to the effect that the respondent was entitled to judgment for the return of said automobile or the value thereof, amounting to $750, and for ten dollars damages. Judgment was entered accordingly, from which this appeal is prosecuted.

Appellant now, in substance, contends that the so-called findings of facts are not supported by the evidence, that the conclusions of law are not sustained by said findings, and that the judgment is contrary to law. It will be observed

that the material issues in this case were presented by the affirmative defense set forth in appellant's answer. This defense was based upon Comp. Laws 1907, section 1404, which reads as follows:

"Any mechanic or other person who shall make, alter, repair, or bestow labor upon any article of personal property, at the request of the owner of such property, shall . . . have a lien upon such articles for his reasonable charges for the labor performed and for any materials furnished and used in making such alteration, repair, or improvement."

It is apparent that the so-called findings of fact·are in truth mere conclusions, and, further, that upon the real issues in the case which were presented by appellant's affirmative defense there are no findings whatever. If this case, therefore, were to be treated as a law case, all that we could do would be to either reverse the judgment because it is not supported by proper findings and remand the cause for a new trial, or to reverse the judgment, and under the authority of *Utah Ass'n, etc. v. Home Fire Ins. Co.,* 36 Utah, 20, 102 Pac. 631, and *Dillon Imp. Co. v. Cleaveland,* 32 Utah, 1, 88 Pac. 670, remand the cause to the district court, with directions to make findings upon all the issues in accordance with the evidence and make conclusions of law thereon and enter judgment accordingly. Treating this case as equitable, however, as, in view of the issues, we think it must be, we may either make findings in accordance with the evidence and direct what the judgment shall be, or we may direct the district court to make such findings of facts and conclusions of law as we may direct and enter judgment accordingly.

After a careful consideration of the evidence, we are all of one mind that the district court erred in not finding the issues in favor of the lien which appellant set up in his answer. We are convinced that when the whole evidence is considered and is given its proper force and effect, and especially in view of the admissions of respondent's agent who directed the repairs to be made upon the automobile in question, the findings sustaining appellant's lien are not only justified, but

that no other findings of facts or conclusions of law are permissible. We desire to state that, under the circumstances of this case, it could subserve no useful purpose for us to set forth the evidence either in detail or in substance, and we shall therefore not do so. It must suffice to say that from the trial court's statements which were made in reviewing the uncontroverted evidence it is clear that the court had no doubt that the agent of respondent requested the appellant to repair the automobile in question, and that pursuant to such request appellant, acting in good faith, made the repairs in dispute. What apparently misled the trial court was the fact that respondent's agent claimed that in making the request to repair the automobile he thought appellant was merely a servant of another who the agent thought would make the repairs. The person in whose care the agent thought he was placing the automobile for repair, however, unqualifiedly denies that he was requested to repair the same, or that he undertook to do so, and he further testifies that appellant and none other took possession of the automobile, and made the repairs thereon. In view of this evidence, there is but one conclusion permissible, and that is that the appellant under the provisions of the statute we have quoted is entitled to a lien upon the automobile for the reasonable value of the repairs. We, however, cannot make findings on all the issues, nor direct what they shall be, for the reason that, at the trial of the case when the question of the value of the material furnished and the labor bestowed in making the alleged repairs on the automobile in question by appellant came up, counsel for respondent took the position that the actual value of the repairs was entirely immaterial. In this regard they contended that if appellant made any repairs on the automobile in question at the request of respondent, and that if the repairs so made were of any value whatever, under the statute referred to above, appellant was entitled to a judgment awarding him the return and possession of the automobile, or, in case a return thereof could not be had, then to a judgment for the full value thereof. The court seemingly also entertained this view, and for that rea-

son respondent neither produced nor offered any evidence regarding the reasonable value of the repairs for which appellant claimed a lien, although in the reply the value of the repairs as claimed by appellant was not only denied, but respondent affirmatively averred that the repairs were not worth in excess of forty dollars. The district court, therefore, could not, and did not, find upon the foregoing question, and, for the reasons stated, we cannot do so, nor can we direct a proper finding. Notwithstanding the fact however, that counsel were in error with regard to the materiality of the question respecting the actual value of the repairs in a case like the one at bar, yet, since the judgment must be reversed and another judgment opposed to their contention substituted therefor, it would be unfair to them and unjust to their client if we should hold that they are precluded from contesting appellant's evidence upon the question of the value of the repairs. We have therefore concluded to follow the case of *Brixen v. Jorgensen,* 33 Utah, 97, 92 Pac. 1004, and remand this case to the district court for one purpose only, namely, for the purpose of hearing any additional evidence upon the question of the reasonable value of the repairs made by appellant upon the automobile in question that either party may desire to submit, and after hearing the same, to make findings respecting such value.

Upon the other issues presented by appellant's answer (and there are no other contested issues), the district court is directed to find the facts in favor of appellant in accordance with the averments contained in his affirmative defense, and to make conclusions of law giving appellant a lien upon the automobile in question for the value of the repairs made by him as found by the court.

The judgment, findings of facts, and conclusions of law are therefore vacated and set aside, and the cause is remanded to the district court, with directions to find the issues presented by appellant's affirmative defense in his favor, to set a time for the hearing of evidence upon the question of the value of the repairs, and to hear such additional evidence upon that question as either or both of the parties may pro-

duce, and, after hearing the same, to find the value of the repairs, to make conclusions of law upon the findings aforesaid awarding appellant a lien upon the automobile in question for the value of the repairs as found by the court, to enter judgment upon the findings and conclusions aforesaid that the automobile in question be returned to appellant, and, in case such return cannot be had, to enter a judgment in his favor for the amount found due him for the repairs, and, in such event, that he have relief against the. respondent's bond as contemplated by law. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.

### ON APPLICATION FOR REHEARING.

McCARTY, J.

Counsel for respondent have filed a petition for a rehearing. The grounds upon which the application is based are: (1) that this court "erred in treating the case as an equitable one;" (2) that this court "erred in remanding said cause for the purpose of making findings of fact in favor of appellant and conclusions of law giving appellant a lien upon the automobile in question." Counsel contend "that, even if it be true that said action is an equitable one, . . . this court erred in reviewing the evidence and going behind the findings and decree of the trial court, for the reason that such review is improper, where no clear oversight or mistake on the part of the trial court occurred."

This is a case in which an equitable defense is pleaded and equitable relief asked for by the defendant in an action at law. For the purpose of disposing of the questions raised by the affirmative part of the defendant's answer, it was necessary for this court to review and weigh the evidence as preserved in the bill of exceptions, and we therefore treated the cause as equitable. Defendant, after setting forth in his answer facts upon which he bases his right to a lien on the property in question, alleges "that

during all the times herein mentioned by reason of the prem-
ises and lien aforesaid he has claimed, and does now claim,
the right of possession in and to said automobile under and
by virtue of the provisions of section 1404 of the Compiled
Laws of the state of Utah 1907." The answer contains the
following prayer: "Wherefore defendant demands judg-
ment (a) that plaintiff recover nothing herein; (b) and that
the defendant recover judgment against the plaintiff for said
sum of $281 and costs, together with interest from the 27th
day of July, 1908.; (c) for the possession of said automo-
bile, and that said judgment be made a lien on said automo-
bile and the same be ordered sold for the satisfaction of said
judgment; (d) that defendant have such other and further
relief in the premises as the court may deem just and equi-
table." Plaintiff in its reply denies the allegations of the
answer, and alleges that the automobile in question was de-
livered to one Spiegel to be by him repaired; that no con-
tract for the repair of the automobile existed between plain-
tiff and defendant; and that defendant had no lien or claim
upon the automobile for repairs done or material furnished.
Under the issues thus tendered, the trial court not only had
the power, but it was its duty, to make findings on the
equitable issues presented by the affirmative allegations of
defendant's answer. And, as stated in the original opinion,
we are clearly of the opinion that the only conclusion per-
missible under the evidence, which we shall later refer to
somewhat in detail, is that defendant is entitled to a lien
on the automobile in question for the reasonable value of
the repairs made thereon by him. Section 19 of article 8 of
the Constitution of Utah provides that in this state "there
shall be but one form of civil action, and law and equity
may be administered in the same action." Comp. Laws 1907,
section 2968, provides that "the answer of the defendant
may contain: (1) A general or specific denial of each ma-
terial allegation of the complaint controverted by the de-
fendant; . . . (2) a statement of any new matter con-
stituting a defense or counterclaim." Section 2969 provides,
so far as material here, that "the counterclaim mentioned

in the next preceding section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action and arising out of one of the following causes of action: (1) A cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim or *connected with the subject of the action.*" (Italics ours.) The subject of the action here is the automobile and the right to its possession. (Pom. Rem., section 775; Bliss, Code Pl. 373; *Lapham v. Osborne,* 20 Nev. 168, 18 Pac. 881; *Deford v. Hutchinson,* 45 Kan. 318, 25 Pac. 641, 11 L. R. A. 257.)

Mr. Pomeroy, in his discussion of this provision of the Code (Pom. Rem., section 92), says:

"There does not seem to be any limit to the use of such defenses other than is found in the very nature of equity jurisprudence itself. Whenever equity confers a right, and the right avails to defeat a legal action—that is, shows that plaintiff ought not to recover in his legal action—then the facts from which such a right arises may be set up as an equitable defense in bar. There can be no other limitation, unless we would defeat the plain intent of the statute."

Under the liberal construction thus given the foregoing provision of the Code, it necessarily follows that a defendant in an action of replevin (claim and delivery) may interpose an equitable defense, and may, if the "new matter" pleaded and the facts proved warrant it, obtain equitable relief. In 34 Cyc. 1414, under the caption, "Title in or Lien of Defendant," the rule is stated as follows:

"Property in defendant is a good defense in an action of replevin, and this is ordinarily true whether it be an absolute, or a special or qualified property in the goods which are the subject-matter of the litigation."

And again, on page 1417 of the same volume, it is said:

"Since the adoption of Codes in most of the states, the doctrine of set-off and counterclaim has undergone much change. At first counterclaims were held not to be available in any action for a tort, and therefore not in replevin, which sounds in tort. But this rule has been so far modified as to allow the interposition of a counterclaim in the full sense of the Code, whether arising on contract or based

upon tort, in an action of replevin, whenever such counterclaim is founded upon a cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim, or whenever it is connected with the subject of the action."

The following cases also illustrate and support this doctrine: *American Soda Fountain Co. v. Futrall,* 73 Ark. 464, 84 S. W. 505, 108 Am. St. Rep. 64; *Reardon v. Higgins,* 39 Ind. App. 363, 79 N. E. 208; *Cooper v. Kipp,* 52 App. Div. 250, 65 N. Y. Supp. 379; *Guille v. Wong Fook,* 13 Or. 577, 11 Pac. 277; *Ludden & Bates v. Hornsby,* 45 S. C. 111-121, 22 S. E. 781; Cobbey on Replevin, section 1148.

Coming, now, to the merits of the case, Earl Dunshee, who was an officer of the plaintiff corporation, and who represented plaintiff in the several transactions out of which this controversy arose, testified that, before the repairing for which a lien is claimed was done, he took the automobile in question to the repair shop of one Spiegel, and had Spiegel do some repair work on it; that he "took it up to him three or four times;" that he finally left it with Spiegel with a request for him to repair it, and that Spiegel promised to do so; that on one of these occasions one Merickle went with him to Spiegel's place of business. Spiegel testified that the automobile referred to by Dunshee was a Reo, whereas the automobile repaired by McCurtain was a Ford. Quoting: "The car brought there by Earl Dunshee was a Reo I believe they call it. It was not the Ford car mentioned in the complaint. It was a different car entirely. Mr. Dunshee never brought a Ford car into the yard. The car spoken of by him taken into the yard was the Reo, not the Ford car mentioned in the complaint at all. I never did make any repairs on the Ford car prior to the time that McCurtain took it." Merickle was called as a witness by plaintiff, and testified that he went to Spiegel's repair shop in company with Dunshee on the occasion referred to by Dunshee in his testimony. On cross-examination he said: "Mr. Dunshee asked Mr. Spiegel to fix up the machine. It was a Reo machine

I think." The court remarked: "The machine in controversy is a Ford." And the witness further said: "I don't say whether Reo or Ford machine. It seems to me it was a Reo." We think, therefore, it may be fairly said that Dunshee in giving his testimony got the Ford automobile confused with the Reo, and that the specific instructions which he claims he gave to Spiegel were with reference to the repairing of the Reo, and not the Ford machine—a separate and distinct transaction from the one under consideration.

McCurtain's right to recover in this action does not depend, however, upon the question as to whether Spiegel's version of the transaction or that given by Dunshee is correct. Dunshee, however, did testify that he made no contract with McCurtain to repair the automobile in question. McCurtain, on the other hand, claims that Dunshee did contract with him to repair the car, and that he, at Dunshee's request, went and got the car, and took it to the repair shop. The evidence shows that McCurtain did some repair work on the automobile before the contract in question was made. He testified, and his testimony is not disputed, that on one occasion he went with Dunshee "to bring back the machine from out near the penitentiary where the machine was stuck in the mud. It was disabled." On the occasion when Dunshee took the automobile to the shop to have it examined for the purpose of ascertaining the extent that it needed repairing, McCurtain rode out with him in the car and made the examination, the trip consuming about two or two and a half hours' time. The next day McCurtain, at Dunshee's request, got the automobile, and took it to the repair shop. McCurtain testified that, when he "asked Mr. Dunshee for the job of repairing that car," Dunshee told him that the car was at his mother's residence, and for him to go and get it. Dunshee testified: "I don't remember Frank McCurtain coming to me and getting the machine. I don't remember telling him it was at my mother's place." The evidence, however, without conflict, shows that the automobile was repaired by McCurtain, and that he furnished the material with which the repairs were made. And the record

as it now stands shows that the repairs were reasonably worth $281. Dunshee testified that, after the car left the shop, it "ran apparently all right. I did not object to it on that ground." During the time the automobile was at the shop for repairs, Dunshee called there several times to inquire about it, and on each occasion found McCurtain at work on it. Dunshee testified regarding these visits to the shop, in part, as follows: "I had conversations with the defendant with reference to the repair of the machine. When he was working on it, I naturally talked to him about it. . . . I talked to McCurtain to find out about the machine. He was the man working on it." Spiegel, the person with whom Dunshee claims he made the contract for the repair of the machine, testified, in part, as follows: "Mr. McCurtain brought the machine there. . . . I did not send for it. It was not delivered to me by any one. It was not in my possession or control. . . . This particular building in which the machine was afterwards repaired (referring to the repairs in question) was in charge of Mr. McCurtain. He locked it up; took care of it." J. A. Morehouse, a "helper" who assisted McCurtain in his work on the car, testified in part, as follows: "I heard conversations between McCurtain and Earl Dunshee along about noon the first trip I made after the car went out of the barn. . . . The substance of the conversation was Mr. McCurtain had been showing Mr. Dunshee certain defects in the car, loose joints, and things like that, and I heard him, Dunshee, say that he should go ahead and fix it up. . . . He was addressing Mr. McCurtain in answer to McCurtain pointing out the defects. I think I worked there about three weeks until the evening before Mr. Dunshee asked to have the car. . . . During all those times I was working for Mr. McCurtain on that car, employed by him. Yes, sir; Mr. Bergman worked with us on the car. Mr. McCurtain seemed to have all the charge, the one that was giving orders. I went to him for anything I wished to know, took my orders from him. . . . No one else appeared to have any control over the direction of the work on this machine but Mr. McCur-

tain." The evidence shows that, when Dunshee called at the shop to get the automobile after it was repaired, Mr. Mc-Curtain started to make out the bill in Spiegel's office. Dunshee, being apparently in a hurry, requested Mr. McCurtain to go to his office, which McCurtain consented to do. They drove to Dunshee's office in the automobile, went into the office, leaving the automobile in the street in front of the office. McCurtain then made out the bill, and handed it to Dunshee, who said that he would "put it up to the board of directors." McCurtain said: "Then I will have to hold the machine until the bill is settled." While McCurtain was making out the bill, the automobile was, by the order of Dunshee, spirited away. Regarding this incident Dunshee testified as follows: "I was furnished with a bill of items and material furnished; yes, sir. He made that out in my office, and left it with me. When he was making out the bill the machine was taken away at my order; yes, sir. . . . It is true that Breckon (the garage man) came and got the machine while I had McCurtain in my office making out his bill. No one else had ever furnished me a bill for repairs on that automobile. . . . After I saw the bill, I didn't intend to pay it, or any part of it." Mr. McCurtain regained possession of the automobile the day after Dunshee had it spirited away, and notified Dunshee that he intended to hold it until the bill was paid. Dunshee then had McCurtain, who was a minor but nineteen years of age, arrested. The record does not show what disposition, if any, was made of the criminal action. Nor is it important. The matter was evidently gone into for the purpose of showing the unwarranted conduct of Dunshee in this transaction, and the extreme to which he was willing to go in his endeavor to deprive McCurtain of the possession of the automobile.

The evidence quoted and referred to clearly establishes the following facts: (1) That Dunshee left a Reo automobile at Spiegel's for repairs, and soon thereafter came there with a Ford, the automobile in question, and that he and McCurtain together examined the Ford machine to determine the nature and extent of the repairs required to put it in good

condition, and that Dunshee then left taking the machine with him; (2) that later McCurtain, at Dunshee's request, brought the Ford automobile to the shop for repairs; (3) that the repair work was done by McCurtain, or under his supervision and direction; (4) that McCurtain furnished the material used in making the repairs, employed, and paid for the machinists who assisted him in repairing the automobile; (5) that Dunshee frequently called at the shop, found McCurtain at work on the automobile, and consulted him about it; (6) that, when Dunshee came for the automobile after it was repaired, he consulted with McCurtain, and not with Spiegel, notwithtsanding Spiegel at the time was present in the shop; (7) that, when McCurtain started to make out a bill in Spiegel's shop, Dunshee requested him to come to his office, which McCurtain consented to do, and thereupon McCurtain went with Dunshee in the automobile to Dunshee's office; (8) that while McCurtain was making out his bill Dunshee surreptitiously got possession of the automobile and had it spirited away.

When the evidence was all in, and both sides had rested, the court, addressing counsel, said: "I will say what the court thinks of these facts, and I would like to hear from counsel as to the law on the facts as I will undertake to give which the evidence shows. The facts, as I take it from the evidence in this case, briefly stated, are: That Mr. Dunshee, acting for the plaintiff in this case, left his car to be repaired, as he thought, with Mr. Spiegel. That later he came there, and in conversation with Mr. McCurtain, the defendant, he said, 'Go ahead and fix it up. Get it done as quick as you can.' Words to that effect. Mr. McCurtain, believing that he had a right to do it, did all the work on this car, became responsible for the assistance that was given to him, employed Mr. Morehouse, and that whatever was done was done by Mr. McCurtain. And, in addition to that, the court finds that there was no delivery made by McCurtain of the car to Mr. Dunshee. Mr. Dunshee took it without any delivery being made; and, further, that there was something due, was at that time, from plaintiff in the action for the repairs to some one.

I don't find that there was a contract made. I think the whole contract is an implied contract." The court in rendering judgment for plaintiff evidently proceeded upon the theory that, in order for defendant to maintain his claim of lien, it was necessary for him to prove by a preponderance of the evidence that he entered into an express contract with plaintiff for the repairing of the automobile, and that he had failed to make such proof. Upon no other theory can we conceive how it was possible for the trial court to arrive at the conclusion it did in the final decision of the case. As we have stated, the evidence, when applied to the well-settled principles of law governing this class of cases, justifies but one conclusion, and that is that the defendant is entitled to a lien on the automobile for the reasonable value of the repairs mentioned; and it is immaterial whether they were made in pursuance of an express or an implied contract. The evidence, however, is all but conclusive that the repairs were made at the special instance and request of Dunshee as plaintiff's agent.

The first impression of the writer of this opinion was that counsel for plaintiff, having induced the trial court to rule that the actual value of the repairs was, under the issues immaterial, and plaintiff having failed, because of such ruling, to introduce any evidence on this point, this court should direct the trial court to make findings on this issue in accordance with the evidence already adduced; but in deference to the opinion and judgment of his associates on this feature of the case he fully concurred in the disposition made of the case by the opinion of the Chief Justice. We are, however, clearly of the opinion that this court in remanding the cause with directions to the trial court to reopen the case for the purpose of permitting the parties to introduce further evidence, if they so desire, in regard to the value of the repairs made by McCurtain on the automobile, dealt as liberally with plaintiff as the record in the case warranted.

The petition for a rehearing is denied.

FRICK, C. J., concurs.

STRAUP, J. (concurring).

I, too, think the petition should be denied. What here chiefly divides the parties is this: The plaintiff claims that its agent left the machine with Spiegel to be repaired, and hence it was liable to him, if any one, for the repairs; the defendant, that the machine was left with him or turned over to him by plaintiff's agent, and that he, and not Spiegel, was requested or engaged to repair it. If the facts are as contended for by the defendant, then, of course, he was entitled to hold the machine until the repairs were paid. If, on the other hand, as claimed by the plaintiff, Spiegel, and not the defendant, was engaged to make the repairs, then the plaintiff, as against the defendant, was entitled to the possession of the machine though the repairs were not paid for. On this crucial point, the real controversy in the case, the trial court made neither findings nor conclusions. The pleaded defense of a claim of lien under which the defendant asserted a right to hold possession of the machine being equitable in its nature, we deemed it our duty to look into the evidence to ascertain the facts in respect of these contentions. We had but little difficulty in determining that the plea was well founded. By that I do not mean that the evidence in that regard is wholly without conflict. Plaintiff's agent testified, in substance, that he left the machine with Spiegel to be repaired, and that he had engaged him to make the repairs. Spiegel testified to the contrary. The defendant and other witnesses testified that the machine was left with or turned over to the defendant, and that he was engaged by plaintiff's agent to make the repairs. The evidence, without conflict, shows that the defendant furnished the material and employed and performed the labor on the machine and made the repairs wholly independent of Spiegel. When the repairs were completed and the machine ready for delivery, the defendant, at the request of plaintiff's agent, took the machine to the latter's place of business, there left the machine on the street, entered the agent's office, and at his request proceeded to make out an itemized account of the repairs. While he was doing that, the agent clandestinely directed another to take the machine,

drive it away, and withhold it. Then the agent informed the defendant that the bill would be presented to the board of directors. In reply to that, the defendant stated that he would retain possession of the machine until the repairs were paid for, but, when he entered the street, he found the machine gone. The next day he reseized it, and notified the plaintiff that he held it until his bill was paid. When the transaction is thus viewed in light of all the testimony and of the conduct of plaintiff's agent, I am persuaded that the defendant's plea is not only supported by a fair preponderance of the evidence, but by the clear weight of the evidence. Upon the record I think a contrary finding would manifestly be against the great weight of the evidence. Whether the repairs were made in accordance with the directions of the plaintiff, or whether they were properly made, and the reasonable value thereof, are, for the reasons stated in our original opinion, questions which are still open for further trial and determination. The plaintiff confessedly was indebted to either Spiegel or the defendant for the repairs. And in view of Spiegel's most solemn admissions of record disclaiming all liability of the plaintiff to him, and nothing appearing wherein it has any defense or counterclaim against Spiegel which cannot be asserted against the defendant, I cannot see wherein plaintiff is very seriously harmed by compelling it, before it is given possession of the machine, to discharge its just obligation to him who admittedly furnished the material and engaged all the labor and made the repairs. I am inclined to think such a course will reflect better justice than to uphold plaintiff's efforts in attempting to unfairly get possession of the machine without paying or offering to pay any one for the repairs, and, according to the testimony of plaintiff's agent, without intending to pay for them.