Appeal from Fourth District.

## BOLITHO v. EAST, Sheriff, et al.

No. 2580.   Decided October 5, 1914 (143 Pac. 584).

1. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—EVIDENCE OF OWNERSHIP. In replevin by the wife of a tenant to recover horses, held by the sheriff under attachment against the tenant in favor of the landlord, in an action which was not based upon the landlord's lien under the lease or under the statute, but upon a special statute allowing recovery for three times the amount of rent due, where the landlord was made a party to the replevin proceedings at the request of the sheriff, evidence that the tenant's wife did not assert her title to the horses at a time when she was informed that her husband claimed them is not admissible to show that the landlord's lien attached to those horses, since the sheriff must rely upon the lien of the attachment and not upon any prior lien. (Page 184.)

2. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—ESTOPPEL TO ASSERT. It appearing that the failure of the wife to claim the horses was at a time long after the execution of the lease, and that it did not induce the sheriff to levy upon them, such failure did not estop the wife from thereafter asserting title to the property, since no action had been taken in reliance thereon. (Page 187.)

3. ESTOPPEL—EQUITABLE ESTOPPEL—CLAIMS OF THIRD PERSONS. The effort of the landlord, in seeking to enforce a special statutory right to three times the amount of rent due under the lease, will not be aided by the equitable doctrine of estoppel, since in any event the lien which the wife would be estopped to deny would be for only the amount of rent actually due. (Page 188.)

4. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—EVIDENCE OF OWNERSHIP. In replevin by the wife of a tenant to recover property attached as her husband's in a suit for rent, evidence of the landlord's conduct, *held* to show that he did not rely upon the failure of the tenant's wife to claim the property at a time after the execution of a lease, and was not thereby induced to refrain from taking additional security. (Page 189.)

5. EVIDENCE—ADMISSIONS—OWNERSHIP OF PROPERTY. In replevin by the wife of a tenant to recover horses attached as property of the tenant, declarations or conduct by the wife from which an inference might be drawn that the property belonged to her husband are admissible for that purpose, although not amounting to an estoppel. (Page 190.)

6. EVIDENCE—HEARSAY. In such an action testimony by the land-
lord that his wife had told him of a conversation with the wife
of the tenant, in which the latter had admitted that the land-
lord had a lien upon the horses, was hearsay. (Page 191.)

7. WITNESSES—CROSS-EXAMINATION—IMMATERIAL ISSUE. In re-
plevin by the wife of a tenant to recover horses held under at-
tachment against the tenant in aid of a judgment for rent, it
was error to permit plaintiff to be cross-examined as to her
ownership of other property, for the purpose of identifying the
property described in the lease, since the issue was not as to
the property described in the lease, but that attached. (Page
191.)

8. REPLEVIN—JUDGMENT FOR DEFENDANTS—VALUE OF PROPERTY—
SPECIAL INTEREST. Where the defendant in replevin claims only
a special interest in the property under an attachment, a judg-
ment for the defendant should state the value of the property,
and also the value of defendant's interest therein.[1] (Page 192.)

Appeal from District Court, Fourth District, *Hon. A. B.
Morgan,* Judge.

Action by Mrs. H. M. Bolitho against Henry East, Sheriff
of Utah County, and others.

Judgment for defendant. Plaintiff appeals.

REVERSED and remanded for new trial.

*J. W. N. Whitecotton* for appellant.

*Parker & Robinson* for respondents.

RESPONDENTS' POINTS.

To the effect that parol evidence is admissible to identify
the property referred to in the lease we cite the following
authorities: 6 Cyc. 1034, where the rule is stated as follows:

"A detailed description of the subject matter of a mort-
gage is frequently insufficient when taken alone to indicate
the property conveyed, the general rule of law is that parol
evidence is admissible, whether the description be general or

---

[1] *Investment Co.* v. *McCurtain*, 39 Utah 544; 118 Pac. 564.

specific, to identify the subject-matter of a chattel mortgage and to separate it from other property of a similar kind. So parol evidence is admissible to show that particular chattels are included by a general description.'' (Jones on Evidence (Sec. Edition) Sec. 450 and cases cited; *Fruit Growers Association* v. *Packing Company,* 66 Pac. 28 (Cal.); *Summer* v. *Mercantile & Milling Company,* 33 Pac. 559 (Ore.); Benjamin on Sales, Sec. 213; Taylor on Evidence, Secs. 1194, 1195; Jones Chattel Mortgages, Sec. 64.)

Where one who owns or has an interest in personal property, with full knowledge of his rights, suffers another to deal with it as his own by selling or pledging it, or otherwise disposing of it, he will be estopped to assert his title or right as against a third person who has acted on the faith of and been misled by his acquiescence. (16 Cyc. 764; *McClain* v. *Abshire,* 16 Mo. App. 333; *Rogers* v. *Robinson,* 104 Mich. 329; *Ingalls* v. *Ferguson,* 59 Mo. App. 299; *Wilson* v. *Scott,* 11 Ky. Law Rep. 370; *Richardson* v. *Oliver,* 71 Miss. 966; *O'Connor* v. *Clark,* 170 Pa. 318; *Stevens* v. *Ludlum,* 13 L. R. A. 270.)

FRICK, J.

The plaintiff, appellant here, brought this action against the defendant Henry East, as Sheriff of Utah County, to obtain possession of four registered mares and one registered stallion, which were taken by said sheriff upon a writ of attachment issued against one R. L. Bolitho, the husband of appellant. The complaint is in the usual form in actions of replevin or claim and delivery as those actions are denominated in our statute. After the service of summons on the sheriff he appeared and asked that the defendants Thomas Featherstone, Sr., and Emma S. Featherstone be made parties defendant in the action as the real parties in interest. The court accordingly ordered them to be made parties. All the defendants, hereinafter called respondents, filed an answer to the complaint in which they denied the allegations of the complaint and justified the taking of the horses under a writ of attachment. They also averred that said R. L. Bolitho was the owner of the horses. They further averred

that the writ of attachment was issued in an action commenced against said R. L. Bolitho for the sum of $291.87 for rent due from him under a certain lease for a farm which he had leased from the two respondents Featherstones; that said action had fully terminated, and that said two respondents were awarded judgment for the sum of $943.32 therein; that the horses levied on were used by said Bolitho on the farm aforesaid; and that he had represented them to be his own at the time he leased the farm in question and when the lease was executed. The respondents also pleaded an alleged estoppel against the appellant. A reply was filed in which the averments of the answer were in effect denied or avoided. A trial to a jury resulted in a verdict and judgment in favor of respondents. The appeal is from said judgment.

A large number of errors are assigned by appellant's counsel, but we shall consider such only as are deemed material. It is urged by counsel that the court erred in admitting certain evidence relating to the alleged es-    1-toppel of appellant, and also erred in charging the jury with respect thereto. In order to determine whether counsel's contentions in that regard should prevail, it becomes necessary to go somewhat into detail respecting the history of the litigation. It appears that in February, 1911, said R. L. Bolitho leased a certain farm from the respondents Thomas and Emma Featherstone; that said Bolitho brought a large number of valuable registered horses and cattle onto said farm, on all of which, pursuant to said lease, the Featherstones claimed a lien for accruing rent. Such a lien would also exist under our statute which could be enforced as there provided. The Featherstones, however, did not choose to rely either upon the statutory lien or upon the lien given them in the lease aforesaid, but brought an independent action aided by the attachment aforesaid for the rent due on the lease amounting to $291.87. In that action they were awarded judgment for three times the amount of the rent due, plus $117.71 or for a total sum of $943.32. The horses in question here were attached in anticipation of said judgment, and were held to satisfy the same when this action

in replevin was commenced. The District Court at the trial, over the objections of appellant, permitted respondents to prove the execution of the lease of the farm and admitted the same in evidence and permitted them to identify the horses and cattle therein enumerated, and also permitted them to prove that appellant remained silent when she should have spoken, and that she did not claim any of the horses in question in this action, but led the respondents to believe that all of them which were brought on to the farm, except the stallion referred to above, which had not then been foaled, were owned by her husband, and that she made no claim to any of them, although she was informed that her husband claimed them. The foregoing circumstances detailed in the evidence arose by reason of a conversation which was testified to by some of the witnesses, wherein certain statements were made by said witnesses to the effect that the ownership of the horses was in her husband, which statements appellants did not explain or deny. The conversation in question, however, occurred a long time after the lease in question was executed, and after appellant's husband had taken possession of the farm under the lease. All of the foregoing evidence was offered and admitted for the purpose of estopping the appellant from claiming the horses in question as her own. Counsel for respondents defend the rulings of the court upon the grounds hereinbefore stated and insist that the evidence was admissible to prove an estoppel. They contend in their brief that the evidence was proper for that purpose, for the reasons, stating them in their own language, that:

"It appears from the record in this case that the lease above referred to still had over one year to run after the date of this conversation, and should the appellant have asserted her ownership in the property in question at that time as was her duty to do, then it would have given the respondents, Featherstones, ample opportunity to have terminated the lease or had other security provided, for the payment of their rent, but instead of asserting her ownership to respondents appellant remains silent and by reason of her acquiescence in said lien and failure to assert her ownership

in said property lulled respondents into security and by reason of her silence as aforesaid they did not terminate said lease or take other steps to secure the payment of the rent that accrued during the year or more after the conversation in question.''

In support of their contention counsel cite *Dann* v. *Cudney,* 13 Mich. 239; 87 Am. Dec. 755. In that case a wife permitted her husband to sell her horse, and although she had ample time and opportunity to give the purchaser notice of her right and title before the purchase price was paid, yet she failed to do so, and made no claim until after payment had been made. Upon those facts the wife was held estopped from claiming the horse from an innocent purchaser. We are dealing with no such case here. In the first place respondents did not bring an action to enforce either the statutory lien or the alleged lien provided for in the farm lease. Had they relied on either lien they would have been limited in their recovery to the amount of the rent due under the lease, namely, $291.87, with accrued interest, if any. In order to obtain what seems to be an unrighteous advantage, they had recourse to and obtained judgment in accordance with the provisions of what seems to be a somewhat peculiar statute which the District Court construed to apply to a case of this kind. In view, however, that no complaint is made of that judgment, it is immaterial whether the court's construction of the statute was right or wrong. Whether one may bring an independent action and entirely ignore or waive an alleged lien for the purpose of gaining an advantage, and after doing so may nevertheless have recourse to such lien as evidence to aid him in an independent action to maintain the advantage gained thereby, or whether he must rely upon his rights under the independent action, is what we are called on to decide. It should be remembered that respondents' right to the horses in question rests upon the attachment issued in aid of the independent action. They must thus stand upon the attachment alone. In the case of *Houck* v. *Linn,* 48 Neb. 228; 66 N. W. 1103, in the fourth headnote, which, in Nebraska, controls

the decision, the Supreme Court of that state states the law applicable here thus:

"In an action of replevin against a constable who held the property under a writ of attachment, his rights depend upon the attachment, and he cannot justify on the ground that the attachment plaintiff had an independent lien upon the property prior to the attachment."

Now, if the officer may not rely upon a prior lien, but must show that the attached property belongs to the attachment debtor by the usual methods of proving ownership, the rule must be the same here, although the officer in this case asked that the attachment plaintiffs be made parties defendant with him. As a matter of course, the officer did not, and could not, claim in his own right, but claims the property for the benefit of his correspondents. The lease, therefore, was not proper evidence for the purpose for which it was offered and admitted, namely, to show that the respondents had a lien upon the property in question. Nor was it proper evidence in aid of the alleged estoppel against appellant.

Moreover, if it be assumed that in this action evidence of an estoppel such as was attempted to be proved would be proper, yet the evidence adduced at the trial was improper, because it was not limited to acts, statements, or conduct occurring anterior to or at the time when the lease was entered into. Ordinarily no estoppel arises from statements or conduct occurring after the contract or transaction in behalf of which the estoppel is claimed is entered into or after the original transaction has fully terminated. In case of the purchase of property Mr. Jones says: "There is no estoppel where the statement is made after the purchaser has become the owner." 2 Jones, Ev., section 275; *Windle* v. *Canaday*, 21 Ind. 248; 83 Am. Dec. 348 and note; *Jones* v. *Dorr*, 19 Ind. 384; 81 Am. Dec. 406. As a matter of course the same rule applies where a mortgage or other lien is claimed. As we have pointed out, counsel do not claim in their brief or otherwise that appellant made any statements or was guilty of conduct which misled the Featherstones or induced them to act at or before the time the

lease was entered into. Appellant, by any statement or conduct occurring thereafter, could not have induced the Featherstones to enter into the lease, nor could otherwise have influenced them in that regard. We need not pause here to again state the essentials of an equitable estoppel or an estoppel *in pais*. Statements by the courts of the essentials of such estoppels are accessible to all and they may be found in any work on estoppel. Assuming, therefore, that all that was testified to respecting appellant's conduct occurring after the lease was entered into to be true, as we must do, yet she was not estopped from asserting the truth respecting her ownership of the horses in question. It is not claimed that the officer was induced to levy the writ of attachment, or that he was in any way influenced by anything appellant said or did, or omitted, either before or at the time the levy was made. Had she pointed out the horses to the officer as belonging to her husband, or had she disclaimed any right or title in or to them before or at the time the levy was made, then the officer might avail himself of her acts and conduct as an estoppel. Cobbey on Replevin (2d Ed.), section 799. See, also, section 147. We cannot see, however, how the officer could avail himself of any acts or conduct that in no way induced him to act or influenced him in levying the attachment.

But we think there is still another reason why respondents may not predicate an estoppel upon the alleged acts of appellant. As before stated, this is not an action to enforce either the statutory landlord's lien or the alleged lien created by the lease, but it is an action to enforce, or satisfy rather, a judgment obtained under a special statute, in which a judgment for three dollars for every one that was due under the lease was awarded and in addition thereto the sum of $117.71 for a purpose not disclosed. If it be assumed, therefore, that appellant in any way influenced respondents to enter into the lease, or that they were induced to enter into a contract wherein they were given a lien on the horses as security for the rent accruing under the lease, and that an equitable estoppel existed against her, yet such a lien would have been purely

equitable, and could have been enforced against her property only to the extent of the lien, namely, for the amount of rent due under the lease. The moment the rent due upon the lease was paid that moment the lien was extinguished, and the officer had no right to question the title or ownership of the horses in question as between appellant and her husband. If she made any representations, therefore, or if she was guilty of any conduct which would have created an estoppel against her respecting her claim to the horses in question, such an estoppel could not have been enforced except to the extent of the rent due under the lease, towit, $291.87, and accrued interest, if any, and not for $943.32 as was done in this action. If appellant, therefore, were estopped to claim her property, it would be for the amount of the rent due the Featherstones under the lease and no more. When the rent was paid the lien would be discharged, and appellant's property would no longer be subject to it. The District Court in effect, however, permitted the Featherstones to enforce a lien against appellant's property, which was created neither by statute nor by the lease. All this was done in the name of equity and upon supposed equitable principles. Surely no one will be bold enough to contend that the Featherstones acquired a lien by estoppel for an amount in excess of the rent that could accrue and remain unpaid upon the very contract by virtue of which the lien and estoppel are claimed.

Neither is the contention tenable that by reason of appellant's conduct and silence the respondents were lulled into inaction, and thus prevented from demanding further security. Their own conduct refutes such a contention. Three witnesses, whose testimony is not impeached, testified at the trial to the value of the four mares and the stallion in question in this action. One witness testified that their combined value was $3,600, another that it was $3,900, and the third that it was $4,200. There was other property in addition to the five horses on the farm, the ownership of which was in appellant's husband. It is true that respondents claim that the horses were not worth that much, but that cannot affect the argument. The rent

due, as we have seen, amounted to only $291.87, with possibly a small amount of accrued interest. Now, if it be assumed that the horses were worth only one-third of what the witnesses said they are and the Featherstones had a lien on them as they claimed they did, why did they not insist on their lien and attempt to collect the rent which amounted to $291.87, instead of demanding judgment for more than three times the amount of the rent due? Why swell the amount of their claim more than threefold if their security for one-third was insufficient? They attempted to compel appellant to satisfy a claim for $943.32 out of her horses, when in equity and good conscience they could be held only for $291.87. The only explanation is that the Featherstones desired to gain an undue advantage under a peculiar statute because the rent was not promptly paid when due. And they now seek to take appellant's property to satisfy an exorbitant judgment under the claim that they have an equitable lien thereon, which, however, they had waived to gain the advantage aforesaid. The court, therefore, grievously erred when it tried the case and admitted evidence upon the theory that the Featherstones had a lien on the horses in question by reason of the alleged estoppel and in charging the jury that the evidence introduced, if they found it to be true, constituted an estoppel against appellant.

Let it not be assumed, from anything we have said or omitted to say, that all the evidence with respect to the lease and ownership of the horses was improperly admitted. It often happens that evidence is proper for one purpose, but is improper for another. What we hold is that the evidence which was objected to by appellant was, under the circumstances of this case, improper to prove and did not constitute an equitable estoppel. The respondents were entitled to prove any declarations made by the appellant at any time, or show any conduct on her part from which it was proper to infer that she was not the owner of the horses in question, or that they belonged to her husband, before and at the time the attachment was levied. The law is well settled that an officer who levies an execution or attachment on property which is claimed by a third person

may, in an action of replevin by such third person, prove any fact which shows that such property is subject to the execution or attachment in question. *Hotchkiss* v. *Ashley,* 44 Vt. 195; Cobbey on Replevin (2d Ed.) pp. 15, 414. The law respecting what must be shown by the officer as a defense against one whose property the officer has levied upon under legal process in the various jurisdictions is tersely stated in 34 Cyc. 1494. The respondents in this case may therefore produce any competent evidence to show that the horses in question are owned by appellant's husband, or that she has no right, title, or interest in or to the same; but they may not, as the court permitted them to do, predicate an estoppel on the acts and conduct of appellant which are described in this record.

It is also assigned as error that for the purpose of proving the alleged estoppel the court permitted Thomas Featherstone to testify that his co-respondent, Martha Featherstone, had informed him of a certain conversation she had had with appellant a long time after the lease was entered into in which appellant had said that under the lease the Featherstones had a lien or mortgage on all the property on the leased premises, which, it was contended, included the horses in question. This was clearly erroneous, for the reasons: (1) Because the evidence was not competent to establish an estoppel for the reasons already stated; and (2) what Martha Featherstone said under the circumstances was merely hearsay. No doubt, if what appellant had said after it was communicated to him had induced Mr. Featherstone to enter into the lease, or had influenced him in that regard, it would have been proper to show by Martha Featherstone that she had communicated the statements made by appellant to him, and he could have testified that he relied and acted on them; but, under the circumstances present here, it was improper to permit Mr. Featherstone to testify to what Martha Featherstone had told him.

It is also insisted that the court erred in permitting appellant to be cross-examined with respect to whether she owned other property than that in question. We cannot see how the cross-examination could have shed any light

whatever upon the issues to be tried, or that the questions propounded were proper cross-examination. We think the court erred in requiring appellant to answer the questions with respect to whether she owned other property or not. But counsel for respondents defend the ruling upon the ground that the evidence was proper to identify the property described in the lease. Counsel are in error, however, in assuming that the identity of the property mentioned in the lease was in issue. The only question in issue was the ownership of the horses in question and not whether appellant owned or claimed to own other property. In view of the whole record we should not, however, reverse the judgment if this were the only error.

There are other errors assigned and argued, but what we have already said is sufficient to dispose of all of the assignments. In view that the case has to be remanded for a new trial, however, we feel constrained to add a few words with regard to what the verdict and judgment should be in cases like the one at bar. The verdict in this case is merely the ordinary verdict finding generally for the defendants, without finding the value of the property and without determining the interest respondents have therein. Neither is the judgment in their favor limited to such interest. The prevailing rule, where the defendant merely claims a special interest in the property by virtue of an execution or other lien, is stated in Cobbey on Replevin (2d Ed.) section 1072, in the following words:

"Where the verdict is for the defendant, who claims only a lien upon or special interest in the property, the general title being in the plaintiff, it is essential that the verdict should specify the amount of the defendant's interest."

In the case at bar this should be required whether the title to the horses is in appellant or in her husband. In any event respondents claim only a special interest in the horses and the value of that interest, as well as the value of the horses in which the interest is claimed, should be found and judgment entered accordingly. But in this case the finding of the jury may have been, and probably was, based upon an

estoppel against appellant.. If, therefore, an estoppel were established against appellant, no greater interest than the amount of the lien could be claimed by or awarded to respondents as against her property. Of course, if it should be found that the horses belonged to appellant's husband, and that she had no interest in them, she cannot complain although the value is not found. In *Investment Co.* v. *McCurtain*, 39 Utah 544; 118 Pac. 564, the rule with regard to what the findings and judgment under such circumstances should be is stated.

The judgment is reversed and the cause is remanded to the District Court of Utah County, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.