## MUNSEE v. McKELLAR et al.

No. 2121.   Decided January 4, 1911.   On Application for Rehearing, June 14, 1911 (116 Pac. 1024).

1. Trial—Findings of Trial Court—Sufficiency. A finding of fact, in a suit involving the ownership and use of the waters of springs, that plaintiff has no right, title, or interest in or to the waters is a mere conclusion, and is insufficient.[1] (Page 287.)

2. Trial—Findings—Uncertainty. A finding that the allegations of the complaint of plaintiff contrary to the findings are untrue is objectionable as too general and uncertain. (Page 287.)

3. Appeal and Error—Harmless Error—Findings. Where issues are not expressly found, but are necessarily negatived by specific findings, or where it clearly appears from the specific findings that issues not found would necessarily be adverse to the defeated party, had findings thereon been made, a failure to find on such issues is not reversible error, provided the findings made support the judgment. (Page 288.)

4. Waters and Watercourses—Springs—Issues—Findings. Where in a suit involving the ownership and the use of the waters of springs, plaintiff showed an appropriation of the waters in 1895, by the construction of ditches, by means of which he diverted the waters and made a beneficial use of them until interfered with by defendant, and defendant showed that in 1904 he constructed a ditch and thereby diverted and used all the waters of the springs for beneficial purposes, but did not show that the waters were then unappropriated, the findings that defendant, in 1904, constructed a ditch from his land to the springs, which were then unappropriated waters, and appropriated and diverted all the waters to his land for irrigation and domestic purposes, and that plaintiff had no right to the waters, or any part thereof, and that the allegations of his complaint contrary to the findings were untrue, were not in conflict with plaintiff's claim, especially since they did not necessarily negative a prior appropriation of the waters by plaintiff, and did not sustain judgment for defendant. (Page 288.)

---

[1] Dillon Imp. Co. v. Cleveland, 32 Utah, 3, 88 Pac. 670; Everett v. Jones, 32 Utah, 491, 91 Pac. 360; Utah Association of Credit Men v. Home Fire Ins. Co., 36 Utah 20, 102 Pac. 631; Volker-Scowcroft Lumber Co. v. Vance, 36 Utah 348, 103 Pac. 974, 24 L. R. A. (N. S.) 321.

5. TRIAL—FINDINGS—REQUISITES. The court, in a suit in equity, should make specific findings of fact which respond to and dispose of the material issues.   (Page 290.)

6. APPEAL AND ERROR—APPEAL IN EQUITY SUIT—FINDINGS. Where the trial court in an equity suit failed to make specific findings which responded to and disposed of the material issues, the court on appeal could either reverse the judgment and remand the case, or determine the facts and direct the entry of judgment accordingly.   (Page 290.)

ON APPLICATION FOR REHEARING.

7. APPEAL AND ERROR—APPEAL IN EQUITY SUIT—FINDINGS. Where, in a suit in equity, the specific findings did not respond to and dispose of the material issues, and the matters involved might not have been fully litigated by the parties because of erroneous rulings of the trial court, the court on appeal will not itself determine the facts and direct the entry of a proper judgment, but will reverse the judgment and remand the case, with directions to grant a new trial.   (Page 291.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Eugene Munsee against Joseph McKellar and another.

Judgment for defendants.   Plaintiff appeals.

REVERSED AND NEW TRIAL GRANTED.

*Halverson & Pratt* for appellant.

*Moyle & Van Cott* for respondents.

STRAUP, J.

This suit involves the ownership and use of the waters of certain springs, called Munsee's Springs, situate near the desert, in Tooele County. The plaintiff is the owner of a tract of land consisting of about 120 acres; the defendants the owners of about 160 acres adjoining. The springs are about three miles from the plaintiff's land and a little farther from the defendants' land. It was alleged by the plaintiff that at the time of the filing of his complaint he was, and for more than thirteen years prior thereto he had been, the owner

of the waters of the springs and of a ditch from the springs to his lands; that during all of such times, by means of the ditch, he had diverted and used the waters for irrigation and culinary purposes, and for the watering of live stock, and that the defendants asserted an unfounded claim or interest in and to the waters and the ditch. The defendants denied the allegations of the complaint, and for affirmative relief alleged that they, in 1904, for the purpose of irrigation and for domestic purposes, constructed a ditch from the springs to their lands, by means of which they diverted all the waters of the springs and used them on their lands, and ever since so continued to use them. Each prayed for a judgment quieting title. The plaintiff filed a reply, denying the affirmative allegations of the answer. The case was tried to the court.

Evidence was introduced on behalf of the plaintiff tending to show that in the year 1895, he settled upon his land and built a house, a stable, and a corral. The waters of the springs, as testified to by some of the witnesses, consisted of about a one-half second-foot flow; others testified that they were sufficient to fill a good plow furrow, and in high water time ran down the wash. In 1895 the plaintiff constructed a ditch from the wash to his land, and used the water upon it for irrigation. Later he constructed a ditch from the springs to a lake and from there to his lands. -Experiencing some difficulty in having the waters reach his lands in that manner, he constructed another ditch direct from the springs to his lands, which was completed in 1899. Between 1895 and 1904, prior to the time the defendants claimed an interest in the water, the plaintiff also used the waters of the springs to irrigate some lands near the lake, about two miles from his lands, upon which he raised some potatoes, and he also irrigated seven or eight acres of the land subsequently acquired by the defendants, upon which he also raised some crops. He also cultivated and raised crops on about eight acres of the lands owned by him, which were irrigated by the waters of the springs, and also used such waters on a meadow on his lands, consisting of about thirty acres, and from which he took from twenty to thirty tons of hay annually; and he also watered

his stock, consisting of sixty to two hundred head. Plaintiff and his witnesses further testified that from 1895, until interfered with by the defendants, he had diverted and used all of the waters of the springs for irrigation and for domestic purposes, and for watering live stock.

Evidence was adduced on behalf of the defendants tending to show that in the fall of 1903, or spring of 1904, they entered upon their lands and built a house and a corral, and in the spring of 1904 they constructed a ditch from their lands to the wash, by means of which they diverted the waters of the springs and used them upon their lands; that in 1904 and 1905, they had cultivated and irrigated about two acres of ground, about ten acres in 1905, and twelve or fourteen acres in 1907, and that from 1904 to 1907 they had used all the waters of the springs on their lands, except when turned off and interfered with by the plaintiff. The defendants further testified that in 1904, when their ditch was constructed and the waters diverted by them, the waters of the springs were then running to waste down the wash, and that there were no indications of any ditch running from the wash or from the springs to plaintiff's lands, and that there was not anything to show that the waters of the springs had ever been used on plaintiff's lands. Other witnesses on behalf of the defendants testified that they saw no ditch running from the wash or from the springs to plaintiff's lands. It was also testified to, on behalf of the defendants, that there were a number of springs, variously estimated at from four or five to eleven, on the lands of the plaintiff, and that his meadow was watered from such springs, and not from the Munsee Springs, and that his meadow was low and wet and needed draining, and that the ground cultivated by the plaintiff on his lands consisted of only about one acre, and was watered, not from the waters of the Munsee Springs, but from a spring or springs on his own lands. The plaintiff and other witnesses testified that the ground cultivated by him on his land, and some of the meadow lands, were so situated that they could not be watered from the springs on his lands, and that the lands cultivated by

him, and a portion of the meadow lands, were irrigated with the waters of the Munsee Springs.

That the plaintiff, prior to 1903, had constructed ditches about the Munsee Springs, some of which were a quarter to a half a mile in length, and a ditch or ditches running from the springs down the wash and towards the plaintiff's lands, and that he had diverted the waters of the springs and used them on lands cultivated by him and upon which he raised crops near the lake, and on lands subsequently acquired by the defendants, is shown by the evidence without any substantial conflict. As to whether the plaintiff, prior to 1904, had extended the ditches to his lands, and whether, prior to that time, he has used any of the waters of the Munsee Springs on lands then owned by him, the evidence is in conflict. In that respect the plaintiff, and other witnesses on his behalf, testified that they ploughed and dug ditches from the springs and from the lake running to plaintiff's lands, by means of which the waters of the Munsee Springs were, prior to 1904, conveyed to and used upon the lands then owned by the plaintiff. Defendants and their witnesses testified that in 1904 there were no indications of any ditch running from the wash or from the springs to plaintiff's lands. Some of them testified that there then were no such ditches; others merely testified that as they casually passed over the country they saw no such ditches. The defendants, however, and other witnesses on their behalf, who also had knowledge of the facts, testified that in 1904, and before the defendants constructed their ditch, there were indications of a ditch or ditches about the springs, and indications that land near there, and some ground on the lands subsequently acquired by the defendants, had been cultivated. By whom the ditches had been made and the ground cultivated, they testified they did not know.

The court found that in the year 1904 the defendants, for the purpose of irrigating their lands and for the watering of live stock, and for culinary purposes, constructed a ditch from their lands to "those certain natural springs of water which were then unappropriated waters, known as Muncee's

Springs," and appropriated and diverted all the waters of
the springs, and conveyed them to their lands for irrigation
and the growing of crops, for culinary purposes, and for wa-
tering live stock, and that they ever since had used all of the
waters of the springs for such purposes; that they had culti-
vated about fourteen acres of their lands upon which crops
had been raised by them, and that the water so used by them
was necessary for such purposes. The court further found
"that said plaintiff, Eugene Munsee, has no right, title, or in-
terest in or to the said waters of said springs, or any part
thereof, and that the allegations of his complaint *contrary* to
these findings are untrue." It will thus be observed that the
court made findings only with respect to the issues raised by
the affirmative allegations of the defendants, and made no
findings with respect to the issues raised by the complaint of
the plaintiff. Upon the findings so made, the court rendered a
judgment awarding the use of the waters of the springs to
the defendants, and adjudged that the plaintiff had no right,
title, or interest in or to them, and enjoined him from as-
serting any.

The plaintiff on appeal, among other things, urges that all
the material facts presented by the issues were not found;
that the finding that the plaintiff had no right, title, or in-
terest in or to the waters was a mere conclusion; and that the
finding that the allegations of his complaint *contrary*
to the findings were untrue was uncertain and too **1, 2**
general. It is also urged by him that the findings are
not supported by, but are contrary to, the evidence. In the
cases of *Dillon Imp. Co. v. Cleaveland,* 32 Utah, 1, 88 Pac.
670; *Everett v. Jones,* 32 Utah, 491, 91 Pac. 360, *Utah As-
sociation of Credit Men v. Home Fire Ins. Co.,* 36 Utah 20,
102 Pac. 631; *Volker-Scowcroft Lumber Co. v. Vance,* 36
Utah 348, 103 Pac. 974, 24 L. R. A. (N. S.) 321, we ex-
pressed our views upon questions of insufficiency of findings.
Tested by what we said there, we think the findings here are
insufficient. That the finding that the plaintiff has no right,
title, or interest whatsoever in or to the waters in question is
a mere conclusion admits of no controversy. We think it
equally true that the finding that the allegations of his com-

plaint *"contrary* to these findings are untrue" is not only too general, but is also uncertain. *(Bank of Woodland v. Treadwell,* 55 Cal. 379; *Ladd v. Tully,* 51 Cal. 278.)

Counsel for defendants, however, urge with some force that the specific findings made by the court relating to the affirmative allegations in the answer necessarily negative the allegations of the complaint. It undoubtedly is true that, where issues are not expressly found, but are necessarily negatived by other specific findings of fact, or where it is clearly made to appear from the specific findings of fact found that the issues not found would necessarily have been adverse to the appellant, had they been found, a failure to find on such issues is not reversible error, if the findings which are made are sufficient to support the judgment.

We think, however, the principle is not applicable to the case in hand. The plaintiff and the defendants were both claimants and actors. The issues tendered by each were not in general terms. The pleadings were so framed that the controversy turned upon particular facts which, in order to conform to the issues presented, required specific findings. That is, it was alleged by the plaintiff, and evidence was adduced, tending to support the allegations, that in 1895 he had made an appropriation of the waters in question by the construction of a ditch or ditches, by means of which he diverted the waters of the springs and made a beneficial use of them from 1895 until interfered with by the defendants, and that he had diverted and used all of the waters of the springs for irrigation, watering of live stock, and for domestic purposes. The defendants alleged, and adduced evidence tending to support their allegations, that in the year 1904 they constructed a ditch, and by means of which they diverted and used all of the waters of the springs for beneficial purposes. It was not alleged by them that the waters were then unappropriated, or that they were then public waters. It was merely alleged by them that they dug a ditch and diverted and used all the waters of the springs for beneficial purposes. The findings which the court made in

these particulars are not in conflict with the allegations of the complaint that the plaintiff, prior to 1904, was, and in 1895 became, the owner of the waters and of the ditch constructed by him, and by means of which the waters had been diverted and used by him for a beneficial purpose, except that he used the waters since 1904. These observations are particularly pertinent, when the issues and findings are viewed in the light of the evidence.

In this connection, it is urged that the statement in the findings that the defendants, in 1904, dug a ditch from "those certain natural waters," Munsee's Springs, *"then unappropriated waters,"* necessarily negatived a prior appropriation of them by the plaintiff. That depends altogether upon what view the court took of what constituted an appropriation, and therein lies the vice of such a finding, when viewed in the light of the pleadings and the evidence. If the court took the view that to constitute a valid appropriation it was necessary for the plaintiff to have used the waters on lands owned by him, or in which he had an interest, then the court misconceived the law. If by that finding the court meant that the plaintiff, prior to 1904, had constructed no ditch and had diverted none of the waters of the springs for a beneficial purpose, then we unhesitatingly say that the finding is contrary to the evidence. If by such a finding it was meant that the plaintiff, prior to 1904, had constructed a ditch or ditches, by means of which he had diverted and used the waters of the springs, but thereafter and before 1904 had abandoned them, then we say no such issue was presented. Again, if from such a finding we are to understand that the plaintiff had constructed a ditch or ditches, but not running to his land, or that he had not used the waters of the springs on his land, or that his land was of such a character that it did not require irrigation, or that he otherwise had not made a beneficial use of the waters, then we are compelled to reach such results from mere deductions and inferences, coupled with the uncertainty of not knowing which of such results was deduced or inferred, or which of such facts found by the trial court.

39 Utah—19

We regret that we have but the conclusions of the court, and not its judgment on the facts relating to the issues presented by the complaint, and that the labor is imposed upon us to determine such facts for ourselves.

The trial court, in an equity, as well as in a law, case, should itself assume the labor of making specific findings of fact which respond to and dispose of the material issues; and in an equity case, where that has not been done, we may reverse and remand, or we may ourselves on the record determine the facts and direct a judgment to be entered accordingly. We have concluded to do the latter.

The amount involved is small. Nothing is made to appear by the record to justify a retrial of the case. If the proper disposition of the case depended alone upon questions of fact as to whether the plaintiff, prior to 1904 or 1903, diverted and used the waters in question on lands then owned and occupied by him, we would, on such a conflict of evidence in that respect as is here shown by the record, be disposed to remand the case to the trial court for a finding of such facts. But we think it is clearly made to appear that the plaintiff, prior to 1903, by means of ditches, diverted and used the waters of the springs for a beneficial purpose on lands other than those owned by him; that before the diversion and use by the defendants of the waters in question the plaintiff had made a valid appropriation of them; and as there is no plea, nor proof, of an abandonment we think it follows that the waters should be awarded to him as prayed for in his complaint.

The judgment of the court below is therefore reversed, and the case remanded to the trial court to make findings of fact, finding the issues presented by the complaint in favor of the plaintiff and against the defendants on their affirmative allegations that the waters, when diverted and used by them, were then unappropriated public waters; and to render a judgment in favor of the plaintiff and against the defendants as prayed for in the complaint, awarding the right and title to the use of the waters in question to the plaintiff, and restraining the defendants from asserting any claim or right therein

or thereto hostile to that of the plaintiff. Costs to appellant. It is so ordered.

FRICK, C. J., and McCARTY, J., concur.

## On Application for Rehearing.

STRAUP, J.

An application for a rehearing is made. We see no reason for granting it. We are well satisfied with the conclusion reached by us reversing the judgment. We are not so well satisfied with the order made by us directing a judgment for the appellant. Some matters may be involved in such a judgment which may not have been fully litigated by the parties, because of certain rulings made and views entertained by the court below contrary to the views upon which the case was ruled by us. Our former order directing a judgment for the appellant will therefore be set aside. And the final judgment of this court is that the judgment of the court below be, and the same is, reversed, and the case remanded, with directions.;to grant a new trial. Costs to appellant.

Let the remittitur, on application, go down at once.

FRICK, C. J., and McCARTY, J., concur.