## PROWS v. HAWLEY et al.

No. 4576. Decided October 18, 1928. (271 P. 31.)

*Bagley, Judd & Ray,* of Salt Lake City, for appellant.

*Sterling K. Heppler,* of Richfield, and *Badger, Rich & Rich,* of Salt Lake City, for respondent.

STRAUP, J.

An opinion was heretofore filed reversing the judgment as against Hawley and affirming it as against Hinckley. On Hinckley's petition a rehearing was granted as to him and the case reargued and resubmitted. On a re-examination of the record, we now are of the opinion that the judgment should be reversed also as to him. The former opinion is thus modified accordingly and this substituted in lieu thereof.

This is a law case tried to the court. Judgment was for the plaintiff against all three defendants individually. Hawley and Hinckley appeal. They claim the complaint does not state a cause of action; that their general demurrer thereto ought to have been sustained.

The substance of the complaint is: That between April, 1924, and July, 1925, "the defendants," at Salina, Utah, purchased oats from the plaintiff of the value of $1,993.18,

which were delivered to them at "their special instance and request"; that they agreed and promised to pay such sum; that a demand of payment was made, but the defendants refused to pay. Judgment was prayed "against said defendants" in the amount stated with interest. The judgment was that "the plaintiff do have and recover of and from J. C. Hawley, O. A. Anderson, and I. N. Hinckley, defendants," the sum stated with interest, amounting to $2,368.25.

The appellants contend that the action attempted to be stated is against a partnership, or against the defendants based on a partnership relation, or growing out of it; that in such case it was necessary to allege in the body of the complaint the existence of a partnership; and because such an allegation was not made therein, as it is not, the general demurrer ought to have been sustained.

The only reference made in the complaint to a partnership is in the caption, "J. C. Hawley, O. A. Anderson, and I. N. Hinckley, doing business under the partnership name of Hawley, Anderson & Hinckley, defendants." Notwithstanding such recitals in the caption, the action, nevertheless is one only against the defendants individually. *Guthiel* v. *Gilmer*, 27 Utah 496, 76 P. 628; *Maclay Co.* v. *Meads*, 14 Cal. App. 363, 112 P. 195, 113 P. 364. As stated in the last-cited case, such words in the caption "do not and cannot make the partnership a party defendant in the action. The words referred to are merely descriptive— that is, they do no more than unnecessarily describe or identify the particular persons proceeded against, in their individual capacities, whatever may have been the intention of the pleader in so using them." Upon such a complaint no judgment properly could have been taken against the partnership. This action must thus be regarded as one against the defendants in their individual capacities only, that they as individuals purchased the oats and agreed to pay for them; and so, and not otherwise, does the complaint charge. As is seen, it is alleged that the defendants, between April, 1924, and July, 1925, purchased the oats from the plaintiff; that

the oats were delivered to them at Salina, Sevier county, Utah, at their special instance and request; that they agreed to pay for them, but refused to make payment. As against the defendants individually the complaint undoubtedly states a cause of action. The demurrer was thus properly overruled.

Whether under such allegations, to show a joint or several individual liability of the defendants, it was competent to prove a partnership when none was alleged, or that the defendants were members of a partnership, or that their liability grew out of or was occasioned because of their relation to a partnership, a proposition concerning which the authorities divide (*Austin* v. *Beall*, 167 Ala. 426, 52 So. 657, Ann. Cas. 1912A, 510, where the majority and minority rules are stated), we need not now decide. Without objection proof was made that the defendants, for purposes presently to be stated, constituted a partnership under the firm name of Hawley, Anderson & Hinckley. No complaint is made of such proof. So that question is not before us.

It is further contended that the court failed to make sufficient and proper findings on all of the material issues as disclosed by the pleadings and the evidence. We have already referred to the material issues presented by the complaint. The answers of the defendants were specific denials of all of the material allegations of the complaint, except that the oats were purchased by the defendant Anderson for his individual and sole use and benefit and that he alone was responsible for the payment thereof. There were no affirmative allegations in the answer requiring a reply, and none was filed. Thus the presented and triable issues, as to the appellants, were as alleged in the complaint and specifically denied by them. That is to say, the court found that between April 22, 1924, and July 21, 1925, "the defendants purchased of the plaintiff certain goods consisting of oats in the sum of $1,993.18; that said goods on or about said days were delivered to the defendants by the plaintiff at Salina, Sevier county, Utah, at defendants' special instance and request, and said defen-

dants agreed and promised to pay the said plaintiff the said sum for the said goods so purchased; that demand was made upon defendants for the said amount and that the defendants refused and still refuse to pay the same; that there is now due thereof from the said defendants to the plaintiff the sum of $1,993.18, together with interest thereon," etc. It in effect is claimed that these findings are insufficient because the court failed to make a finding as to the question of partnership, especially since, as it is urged, the theory on which the case was tried by the plaintiff was that the obligation sued on was a partnership obligation and the appellants liable because members thereof. In support of the contention the appellants cite and rely on *Implement Co.* v. *Cleaveland,* 32 Utah 1, 88 P. 670; *Everett* v. *Jones,* 32 Utah 489, 91 P. 360; *Utah Ass'n of Creditmen* v. *Home Fire Ins. Co.,* 36 Utah 20, 102 P. 631; *Investment Co.* v. *McCurtain,* 39 Utah 544, 118 P. 564; *Munsee* v. *McKellar,* 39 Utah 286, 116 P. 1024; *Hall* v. *Sabey,* 58 Utah 343, 198 P. 1110; *Baker* v. *Hatch* (Utah) 257 P. 673. These cases hold, and it is the undoubted rule, that until the court has found on all the material issues raised by the pleadings, the findings are insufficient to support a judgment; and that findings should be sufficiently distinct and certain as not to require an investigation or review to determine what issues are decided. Looking merely to the pleadings, the findings are within the rule and are sufficient. The general rule is that ultimate facts may be stated in the findings in the same way they are stated in the pleadings if there well and sufficiently stated, not by a mere reference to the pleadings, but stated in the language of the pleadings, as was here done. 2 Hayne, New Tr. & App. (Rev. Ed.) § 242; 8 Standard Ency. Pro., p. 1025. As is seen, all of the material issues are presented by the complaint. We have already held that the complaint states a cause of action without containing any allegation of partnership. The findings being in the language of the complaint are thus sufficient to support the judgment, which may not be reversed because not supported by sufficient

findings. But within the issues presented was an issue tried without objection, that of partnership and the liability of appellants because members thereof. No findings were made as to that issue unless an affirmative finding in such respect is necessarily implied from the finding that the oats were purchased by and delivered to the defendants at their special instance and request. Therein lies the chief cause of complaint of appellants. The respondent defends the judgment largely on the fact of partnership and seeks to hold appellants individually liable because members thereof. To consider that leads to the evidence and to the further question raised as to the sufficiency of the evidence.

It is shown that the three defendants, under the name of Hawley, Anderson & Hinckley, entered into a contract with the state road commission of Utah to construct three sections of road known as F. A. P. 17-A, 17-B, and 67, in Millard county, Utah. Just what the relation of the three defendants was to each other is not definitely disclosed except as may be inferred from the joint name, but in the trial was spoken of and referred to as a partnership. Whatever the relation was, it was testified to that Hawley was president, Anderson manager, and Hinckley secretary and treasurer. We think the evidence sufficient to show that the relation was a partnership. It, however, did not do any of the construction work. It sublet the grading of section 17-B to Anderson, a member of the firm. The partnership had the undoubted right to do that. *Farney* v. *Houser*, 109 Kan. 75, 198 P. 178; *Condon* v. *Callahan*, 115 Tenn. 285, 89 S. W. 400, 1 L. R. A. (N. S.) 643, 112 Am. St. Rep. 833, 5 Ann. Cas. 659; *Midwest Reserve Tr. Co.* v. *Pioneer Cattle Loan Co.*, 119 Kan. 528, 240 P. 587. The hauling of gravel, the grading of other sections, and other construction work were sublet by the partnership to divers other persons in no way connected with the partnership. The firm, as such, had no teams, tools, machinery, or equipment with which to do the work. It merely entered into the agreement with the state road commission to do the construction work, and

then sublet the work to others at a cost or price less than that specified in the contract with the state road commission; the difference being the firm's profit. Anderson had horses, tools, and equipment with which to do the work sublet to him. The partnership did not, nor did Hawley or Hinckley, have any interest in the horses, tools, or equipment. Prows, the plaintiff, at Salina, Utah, was in the business of buying and selling hay and grain. He testified that the defendants Anderson and Hinckley visited his place of business and told him that they wanted to purchase oats for feeding horses on the contract they had entered into with the state-road commission, and asked him if he was able to supply them with the oats; that Hinckley stated that Hawley, Anderson, and himself had a contract to do state work in Millard county; that Anderson was acting as general manager and that the plaintiff should fill any order given by Anderson; that plaintiff asked for an advance payment of $50, and Anderson asked Hinckley if that would be all right, and Hinckley replied that it would; that Anderson gave his individual check in payment of the $50; that Hinckley told him that the payments for the oats would be made by Anderson every 30 days; that the plaintiff then made out an order for 50 tons of oats, which was signed by Anderson and Hinckley individually only; that plaintiff did not have possession of the order; that he had searched for it but was unable to find it.

The plaintiff further testified that between April, 1924, and July, 1925, he delivered to Anderson, or to his teamsters, oats to the value of about $7,000 on which there was a balance due of the amount set forth; that all of the oats delivered, except the amount unpaid, was paid for by the personal checks of Anderson; that the correspondence had respecting the transaction was had between the plaintiff and O. A. Anderson personally; that the correspondence written by plaintiff was addressed to "O. A. Anderson" and not to the firm, and that written by Anderson was signed by him personally and not in the firm's name; that some of the correspondence

by Anderson was on letterheads of the firm Hawley, Anderson & Hinckley, but the matters referred to therein referred to dealings merely between the plaintiff and O. A. Anderson; that the sales slips were made out to and in the name of "O. A. Anderson" and not in the name of the firm, as the purchaser of the oats. The statements rendered by the plaintiff, including the final statement of the account, were rendered in the name of and to "O. A. Anderson," and not in the name of the firm, as the purchaser of the oats and the debtor; and all of the transactions had by the plaintiff with respect to the oats were entered and carried on plaintiff's books as transactions and dealings with "O. A. Anderson," and not with or in the name of the firm.

The defendants gave evidence to show that the purchases of the oats were exclusively by Anderson and for his individual use and benefit, and not by or for, or on behalf of, the partnership; that when the first order was given for 50 tons of oats the individual check of Anderson of $50, given as an advance payment thereon and the first transaction had, the plaintiff was told that the firm had sublet a part of the construction work to Anderson, that he was buying the oats to do the grading which was sublet to him, and that he alone was to pay for the oats, and that the firm was not in any way to be responsible for the payment and had not anything to do with the purchase of the oats; that Hinckley had not signed the order for 50 tons of oats, or any order; and that Hinckley accompanied Anderson to plaintiff's place of business to see that the arrangement made by and between plaintiff and Anderson with respect to the purchase of oats was solely between the plaintiff and Anderson and the plaintiff to look alone to Anderson for payment of all oats delivered to him, and that the plaintiff was so informed. Further evidence was adduced to show that in November, 1924, about seven months after the first oats were delivered by plaintiff to Anderson, the firm sold to Anderson & Sons all of the firm's right, title and interest in and to its contract with the state road commission as to the construction of section 67.

The plaintiff, for about eight months thereafter, and until in July, 1925, continued to sell and deliver oats to "O. A. Anderson," as he had done theretofore. It is not made to appear whether the plaintiff did or did not have knowledge of that assignment. In December, 1925, Anderson became involved and unable to meet his obligations, including the balance due the plaintiff. So far as disclosed by the record, it was not until then that the plaintiff sought to hold either Hinckley or Hawley liable. The plaintiff does not claim that he had any conversation with Hawley about the matter until in April, 1926, at which time Hawley disclaimed all liability.

Three notes, one for $1,000, one for $743, and one for $1,138, the amount of the account then due and unpaid, were, in August, 1925, made out by plaintiff and by mail sent to Anderson for his signature thereto. Anderson signed them "O. A. Anderson & Sons," and, so signed, returned them to the plaintiff. The plaintiff sent them back to Anderson, saying that he could not accept them "that way." Then Anderson signed them "O. A. Anderson & Sons, by O. A. Anderson," and again sent them back to the plaintiff. The plaintiff, on his direct examination, testified that he again returned the notes to Anderson, saying that he "could not accept them," but that Anderson again sent them back, and that then the plaintiff kept them. On his cross-examination the plaintiff testified that he kept the notes when they were sent back the second time, and since then had possession of them and sought to collect them. The defendants contend that the plaintiff had accepted the notes in payment of the account. The plaintiff denied that. But the significant point in such respect is that the notes were not sent back by plaintiff to Anderson because they were not signed by the firm name of Hawley, Anderson & Hinckley, or by Hawley or Hinckley; nor did the plaintiff then make any request or suggestion that the firm, or that Hawley or Hinckley, sign the notes; nor was any complaint then made by plaintiff because the notes were not signed by or in the name of the firm Hawley, Anderson & Hinckley.

Thus the liability of Hawley was wholly dependent upon the facts of whether there was a partnership existing between the three defendants, the nature thereof, and whether the oats were purchased in the name of or for or on behalf of the partnership, or for its use and benefit, or within the scope of the partnership business. No findings as to such matters are made. That there was some sort of a partnership existing between the three defendants, and that they, as such entered into an agreement with the state road commission to do the construction work on three sections of road, the evidence is not in serious conflict. However, whether the oats were purchased alone by Anderson and for his sole use and benfit, or for and on behalf of the partnership, or within the scope of the partnership business, the evidence is in direct conflict. That a portion of the construction work was sublet by the firm to Anderson is not disputed. The defendants gave evidence to show that when the first arrangements were made with respect to purchasing the oats, and before any was delivered, the plaintiff was informed that a portion of the construction work was sublet to Anderson; that he alone was purchasing the oats and for his sole use and benefit; that he alone, and not the partnership or firm, was responsible for any oats sold and delivered to him, and that the plaintiff was required to look alone to him for payment. The plaintiff denied that any such information was given him, or that any such statements were made to him. The liability of Hawley is wholly dependent upon what kind of finding is made with respect to such evidence in conflict and as to whether the oats were purchased within the scope of the partnership business. Clearly, if the facts in such respect are found as shown by the evidence of the defendants, Hawley was not liable. This being a law case, it is not within our province to make or direct findings on conflicting evidence. Upon such an important issue, which so far as concerns the liability of Hawley was the real crux of the case, the court ought to have made a finding. The omnibus find-

ing that the oats were purchased by and delivered to the defendants at their "special instance and request" does not suffice. The word "special" denotes a particular kind or character; distinct from other kinds; an exceptional character; noting something more than ordinary. Cent. Dic.; 36 Cyc. 517. The word "instance" denotes an impelling motive, influence, or cause; at the solicitation or suggestion of. The word "request" denotes an expression of desire of some one for something; to ask. Cent. Dic. The phrase "at his special instance and request" denotes something which in its nature and in a degree is personal; something solicited, suggested, or requested by one personally, or by some one for or on his behalf. As to Hawley there is no evidence to justify a finding that any such sale or delivery was made to him, one at his "special instance and request." True, a member of a partnership may, because of his membership, be held individually liable for a partnership debt or obligation incurred within the scope of the partnership business. But, as is seen, no partnership or partnership liability or obligation is alleged and none found. And on the complaint no judgment could have been taken against the partnership. The only liability alleged and found against the defendants was a personal and individual liability incurred at their "special instance and request."

Further as to the sufficiency of the evidence to show liability as to Hawley: Though the court had found that the three defendants were partners, that no such information was given the plaintiff as shown by the defendants' evidence, that Hinckley or Anderson had stated to plaintiff, as testified to by him, that Hawley, Anderson & Hinckley had a contract to do state road work, that Anderson was acting as general manager, and that the plaintiff should fill any order Anderson gave him, yet the undisputed evidence is that the plaintiff, and as shown by his sales slips, the statements of account rendered by him, the transactions as entered and carried on his books, and his course of dealing with respect to the sale and de-

livery of the oats, dealt with and regarded Anderson as the purchaser of the oats and as the debtor, until his disclosed disability to pay the obligation. Such conduct and course of dealing is inconsistent with the claim that the oats were purchased by or for, or on behalf of, or sold to, the partnership within the scope or in furtherance of the partnership business, or of a claim of liability against Hawley merely because he was a member of the firm.

That, to a large extent, may also be said as to Hinckley. Apart from that there is this difference as to the liability of Hawley and Hinckley: There is evidence to show, although denied by Hinckley, that he as well as Anderson solicited the first purchase of oats from the plaintiff, and that he then with Anderson in their individual capacities signed an order for 50 tons of oats to be delivered to Anderson; each promising and agreeing to pay for them. Indisputably the oats delivered on that order were paid for. Oats were thereafter sold and delivered to Anderson by the plaintiff covering a period of about one year and three months on the exclusive orders of Anderson or Anderson & Sons, on which there was a balance unpaid in the amount sued for. To hold Hinckley liable for the payment of the oats thereafter sold and delivered to Anderson, the plaintiff points to his testimony wherein he testified that when the first order was given for 50 tons Hinckley stated that he, Hawley, and Anderson had a contract to do state work; that Anderson was acting as general manager, and that the plaintiff should fill any orders given by Anderson, and that a check in payment therefor would be given by Anderson; that he would pay for all oats delivered on his order. In our former opinion, looking at the evidence most favorable to the plaintiff, we entertained the view that the evidence as to Hinckley was sufficient to support the omnibus finding that all the oats delivered to Anderson were sold and delivered not only at the instance and request of Anderson but also of Hinckley. However, as is seen, Hinckley denied making any statement to the plaintiff other than

that the oats were to be purchased alone by Anderson and exclusively for his use and benefit, and not for the use and benefit or for or on behalf of Hinckley or Hawley, or for the firm of Hawley, Anderson & Hinckley. No findings were made by the court with respect to such matter, except as may be implied in the omnibus finding, which we think was not sufficient in such particular. We are further persuaded that on the record a holding of liability as against Hinckley, on the theory that the oats sued for were sold to him at his special instance or request, is irreconcilable with the manner in which the plaintiff dealt with the transactions and as shown by his sales slips, the statements of account rendered by him, the transactions as entered in and carried on his books, his dealings throughout the whole transactions regarding Anderson as the sole purchaser of the oats and making no claim of any liability against either Hawley or Hinckley until after the insolvency of Anderson and his inability to pay not only plaintiffs claims but claims of divers other creditors were disclosed. All this coming from the testimony and evidence of the plaintiff, and concerning which there is no dispute, and the order for the 50 tons of oats signed by Hinckley as testified to by the plaintiff having been fully paid and the subsequent orders covering a period of a year and more having been filled by the plaintiff on the sole orders of Anderson or of Anderson & Sons, we now think the evidence insufficient to justify the omnibus finding that the oats sued for were sold to Hinckley or Hawley at his special instance or request.

Thus the order is that the judgment as to both Hawley and Hinckley is reversed and the case as to them remanded for a new trial, with leave to the plaintiff to amend his complaint if he be so advised. Costs to the appellants.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.