## STATE v. BARTHOLOMEW

No. 5532.   Decided December 7, 1934.   (38 P. [2d] 753).

*Elliott R. Wight,* of Salt Lake City, for appellant.

*Joseph Chez,* Attorney General, and *Zelph S. Calder,* Deputy Attorney General, for the State.

EPHRAIM HANSON, Justice.

On December 12, 1932, appellant herein was adjudged guilty of bastardy in a proceeding before the district court of Salt Lake county. By the decree entered in said proceeding defendant was ordered to pay the mother of the child involved for its support and education the sum of $200 in quarterly payments of $50 each for the first year, and the sum of $150 each year thereafter for seventeen years. He was also ordered to execute and file with the clerk of said court a bond in the sum of $2,750 to secure the payment of said sums. On November 6, 1933, the mother of the child made an affidavit reciting the foregoing facts and stating that "defendant has wilfully failed and neglected to pay said sums due and owing amounting at this time to $200, or any part thereof, and still continues to wilfully fail and neglect to pay the same as adjudged and ordered

by this court." She thereupon prayed that defendant be ordered to appear and show cause "why he had not obeyed said orders and decrees" of the court, and "why he should not be found guilty of contempt and punished accordingly."

Upon such affidavit an order to show cause was issued and a hearing thereof was had before the court without a jury on November 18, 1933. The defendant was the only person to testify at the hearing. At the conclusion of the testimony the trial court made a statement which appears in the reporter's transcript of the proceedings as follows: "The defendant is found in contempt of court for not making any payments to the complaining witness, and sentenced to thirty days in the county jail, but sentence is stayed until next Saturday at which time the court will make a further order."

Nothing further was done, however, until December 14, 1933, when it appears that defendant moved the court to vacate its order finding defendant in contempt of court on the ground that the evidence showed that defendant's failure to pay the money so ordered to be paid was not willful, but on the contrary was due to his inability to pay the same. The transcript then shows that the court made the following statement:

"Counsel moves that the court vacate its order finding the defendant guilty of contempt. The court declines to do so, and orders the defendant committed."

No findings of fact were made and no order entered except a minute order similar in language to the statements of the court above quoted. Defendant, in this appeal, assigns as error: First, the overruling of defendant's motion in arrest of judgment; and, second, the entry of the order of commitment.

14-2-11, R. S. Utah 1933, formerly section 390, Comp. Laws Utah 1917, pertains to bastardy proceedings and provides as follows:

"In case of willful default in the payment when due of any installment according to the condition of the bond or judgment the court

may adjudge the defendant guilty of contempt by reason of such nonpayment, and may order the defendant committed to the jail of the county until the amount of such installment as may be due shall be fully paid, together with the costs of commitment. Such commitment of the defendant shall not operate to stay execution upon such judgment."

14-2-8, R. S. 1933, formerly section 387, Comp. Laws 1917, provides as follows:

"In case the defendant shall refuse or neglect to give such security as shall be ordered by the court, if able so to do, he shall be committed to the jail of the county; there to remain until he shall comply with such order, or until otherwise discharged in due course of law. Any person so committed may be discharged for insolvency or inability to give bond."

On the general subject of contempt, 104-45-1, R. S. 1933, provides what acts and omissions are contempts and subdivision (5) thereof provides that "disobedience of any lawful judgment, order or process of the court" is a contempt. Under the provisions of 104-45-10 a person adjudged guilty prisoned in the county jail not exceeding 30 days, or he may be both fined and imprisoned.

It is clear from the language of 14-2-11 and 14-2-8, above quoted, that a person not able to comply with the order of the court either as to the payment of money or as to the furnishing of a bond cannot be found guilty of contempt. His failure to comply in either particular ■ must be willful and this presupposes an ability to comply with the order or judgment. As said by this court in the case of *State* v. *Kranendonk,* 79 Utah 239, 9 P. (2d) 176, 179, "If the failure and refusal [to give security] was not willful but due to his inability to comply therewith, the order [of commitment] must be set aside." The case of *State* v. *Reese,* 43 Utah 447, 135 P. 270, is to the same effect both as to the giving of security and as to the payment of money.

The court did not as a coercive measure order defendant committed until such time as he should purge himself by furnishing the security and make payments as provided by

the judgment rendered in the bastardy proceedings; but ruled that defendant be confined to jail for thirty days, apparently by way of punishment for failing to furnish the bond and to make the payments required by the judgment rendered. If the rule or judgment of the court committing defendant to jail be thus regarded, as we think it must, then even though the general statute in respect to contempt (104-45-1 et seq., R. S. 1933, supra) be invoked, yet the inability of defendant, without fault on his part, to render obedience to the judgment would be a complete defense to the charge of contempt for failure to comply with such judgment, inasmuch as the ability to comply with the judgment or order is a prerequisite to the validity of a judgment of contempt. *Utah Power & Light Co.* v. *Richmond Irr. Co.,* 80 Utah 105, 13 P. (2d) 320; *Watson* v. *Watson,* 72 Utah 218, 269 P. 775; *Hillyard* v. *District Court,* 68 Utah 220, 249 P. 806, 809. See also notes in 22 A. L. R. 1256; 31 A. L. R. 649; 40 A. L. R. 546; and 76 A. L. R. 390; and *Ex parte Gerber* (Utah) 29 P. (2d) 932, 933.

Since the ability of the defendant to comply with the order of the court is essential to constitute a contempt, it being conceded that the order has not been obeyed, a consideration of certain facts to determine whether a contempt has been committed is necessarily required. The question, therefore, remains as to whether findings of fact, covering the essential facts involved, must be made by the court in order to support a judgment of contempt. 104-26-3, R. S. 1933, provides that: "In giving the decision the facts found and the conclusions of law must be separately stated, and the judgment must thereupon be entered accordingly."

This section, together with 104-26-2, has been before this court in numerous cases, and we have consistently held that "it is the duty of the court to find upon all material issues raised by the pleadings, and the failure to do so is reversible error." *Piper* v. *Eakle,* 78 Utah 342, 2 P. (2d) 909, 910. It has also been held that findings which are only mere conclusions such as that all the allega-

tions of a complaint are true, or that defendant has failed to establish a defense, or that the court finds for plaintiff and against defendant, are wholly insufficient to meet the requirements of the above statutes and cannot support a judgment. *Piper* v. *Eakle,* supra; *Munsee* v. *McKellar,* 39 Utah 282, 116 P. 1024; *Westminister I. Co.* v. *McCurtain,* 39 Utah 544, 118 P. 564; *Baker* v. *Hatch,* 70 Utah 1, 257 P. 673.

In the present case the findings merely assert that "the defendant is found in contempt of court for not making any payments to the complaining witness." No finding is made in respect of his ability to do so. Such a finding is wholly insufficient as a finding of fact and would not support the judgment of contempt if findings of fact are essential in contempt cases.

It has been held by this court that a bastardy proceeding is in the nature of a civil, rather than a criminal, proceeding. *State* v. *Kranendonk,* supra. We are of the opinion that a contempt proceeding arising out of a failure to comply with the judgment of the court in such proceeding, as is involved in the instant case, is likewise a civil proceeding. The following cases support this conclusion, at least by way of analogy. *Hillyard* v. *Disrict Court,* supra; *Terminal Railroad Ass'n* v. *United States,* 266 U. S. 17, 45 S. Ct. 5, 69 L. Ed. 150; *State* v. *Plese,* 134 Wash. 433, 235 P. 961.

Being a civil proceeding, we perceive no good reason why the requirements of 104-26-3, supra, should not apply. 14-2-11 and 14-2-8 are silent on the question of making findings of fact. 104-45-3, R. S. 1933, provides as follows:

"When a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be punished summarily, for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as prescribed in section 104-45-10. When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or

judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators or other judicial officers."

While this section expressly requires a statement of facts in case of a direct contempt, we do not think it follows by implication that findings of fact are not essential in a constructive contempt. Without a statement of facts in a direct contempt there would be nothing to review by the appellate court. Such a statement, for purposes of review, performs the same function as the affidavit in a constructive contemt, in that it specifies wherein it is claimed a contempt has been committed. It also is a finding of fact to support the judgment of contempt. It is clear, by 104-26-3, the Legislature intended that in civil matters the court should make specific findings so that it would affirmatively appear upon what considerations the judgment entered was based, as a very substantial assurance that justice would be done and to simplify a review of the judgment. It seems to us that the usefulness and necessity of findings of fact are as much, if not more, apparent in a case of contempt, such as the instant case, where defendant may be fined and imprisoned. Such a requirement seems to us to be clearly within the legislative purpose, as expressed in the statute above referred to, and is both necessary and reasonable as a means of safeguarding the rights of our citizens and promoting the ends of justice.

An examination of the cases shows there is some division of authority and some confusion as to the necessity of the trial court making findings of fact to support a judgment of contempt. In this jurisdiction, however, it is very definitely settled that findings of fact must be made, ■ otherwise the order or judgment adjudging defendant to be in contempt has no support, is without jurisdiction, and is null and void. This court in the case of *Hillyard* v. *District Court*, supra, said:

"We are not to be understood as holding that formal findings are absolutely requisite to support a judgment, but it must appear in the judgment or elsewhere in the record that the court has found

facts necessary to support its judgment; otherwise the judgment or order of the court has no foundation in the record."

In the case of *Ex parte, Gerber,* supra, Mr. Chief Justice Straup, speaking for the court, states that the holding of the Hillyard Case is "to the effect, and is supported by ample authority, there cited, that, unless the court on a hearing before it invoking jurisdiction has made and filed findings of fact to the effect that the defendant had ability or was able to comply with the decree or orders of the court, or intentionally and contumaciously had deprived himself of ability to comply therewith, the court was without jurisdiction to commit the defendant as for contempt." In the case of *Parish* v. *McConkie, Judge* (Utah) 35 P. (2d) 1001, just recently decided by this court, both the Hillyard and Gerber Cases are approved and followed. The following authorities also support the rule adopted by this court: *Hoffman* v. *Hoffman,* 26 S. D. 34, 127 N. W. 478, 30 L. R. A. (N. S.) 564, Ann. Cas. 1913A, 956; *Ex parte Burns,* 83 Mont. 200, 271 P. 439; *Myers* v. *Superior Court,* 46 Cal. App. 206, 189 P. 109; *Tennell* v. *People,* 253 Ill. App. 422; *People* v. *Saylor,* 238 Ill. App. 142; note Ann. Cas. 1913A, 957; 5 Cal. Jur. 952, § 48; 6 R. C. L. 536.

We are of the opinion, therefore, that, in a contempt proceeding such as we are here considering, where the defendant is accused of contempt for failing to perform an act enjoined by a judgment or order of the court, it is the duty of the court to inquire into the matter, and ■ from the evidence submitted, to determine whether a contempt has, in fact, been committed and to make proper findings to support the decision of the court. Such findings should recite the specific facts, and not mere conclusions. They need not necessarily be formal, but should be sufficiently stated either in a separate statement or in the judgment itself, so that the record, thus made, would reveal the factual basis upon which the judgment of contempt was founded.

Since, in this case, there are no findings of fact to support the judgment of contempt, it follows that the order committing defendant to jail must be, and it is hereby, vacated. In view of the foregoing it is not necessary for us to review the evidence or to express any opinion as to the suffiency of the affidavit upon which the order to show cause was based.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and MOFFAT, JJ., concur.