## STATE v. CALDER (two cases).

Nos. 7384, 7385. Decided March 15, 1950. (215 P. 2d 912.)

See 10 C. J. S., Bastards, sec. 117. Bastardy, failure to furnish bond as ground for incarceration, see note, 118 A. L. R. 1109. See, also, 7 Am. Jur. 710.

*Evans, Lowry, Neslen & Bertoch,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Atty. Gen., and *Quentin L. R. Alston,* Asst. Atty. Gen., for respondent.

WOLFE, Justice.

The appellant, Clive K. Calder, was adjudged to be the father of a bastard child in two different cases by the court below. The two cases were combined for the purpose of trial and they are combined on this appeal since they involve identical questions. The cases were tried before the court sitting without a jury. After having found the appellant to be the father of the two children, the court, on June 18, 1949, examined the appellant for the purpose of determining what yearly amount should be paid by him for the support, maintenance, and education of the

children. Section 14-2-7, Utah Code Annotated 1943, establishes the maximum yearly amount of $200 for the first year after the birth of the child and $150 for the next succeeding seventeen years. At the conclusion of the hearing on June 18th the court entered an order

"that the defendant pay $30.00 per month to the office of the County Clerk, $25.00 of which is to apply on the said support of the two minors, and $5.00 of which is to apply on the back support until the back support has been caught up in the amount of $467.00, after which time payments drop to $12.50 per month in each case as provided by law; payments to begin on July 5, 1949, in the amount of $15.00 and like payments to be made on the 20th and 5th of each month thereafter. Defendant to be placed on bond for faithful performance and committed to the County Jail until such time as bond is furnished."

The appellant was thereupon committed to the county jail, but later that same day the then presiding judge of the Third Judicial District Court granted a stay of commitment until June 20, 1949, at which time the case in its entirely was transferred to the presiding judge. The court signed findings of fact, conclusions of law and the judgment on July 6th. One finding of fact recited that the defendant had wilfully failed and refused to obtain a bond. Exceptions to the findings were filed and argued the same day. On June 27th and July 9th motions were filed to set aside the order of commitment and allow the appellant an opportunity to present evidence regarding his inability to obtain a bond, but the court refused to entertain the motions.

The appellant contends that the lower court erred in making findings of fact and conclusions of law that he was able to obtain a bond to secure payment of the amounts adjudged against him; that he had wilfully failed and refused to obtain a bond; and that consequently he was in contempt of court and should be incarcerated until said bond was furnished. The appellant also assigns as error the refusal of the trial court to hear evidence as to the appellant's inability to obtain a bond.

At the hearing held June 18th to determine what amount should be paid by the appellant for the support, maintenance, and education of the children, the appellant and his brother, Harold Calder, testified as to the appellant's income and expenses. The State offered no evidence on this question as perhaps it could not; the appellant's evidence is uncontradicted. The appellant testified that he was employed by his brother, Harold, in the latter's automobile business, receiving therefrom $300 per month; that he had no other income; that there was a franchise for a Willys automobile agency in his name, but that his brother, Harold, owned the franchise and that he (the appellant) had no ownership in the franchise whatever; that he owned an equity in a house he was residing in and that he owed a mortgage debt on this house in the sum of $3,300 on which he was making monthly payments of $50; that within the last sixty days he had endeavored unsuccessfuly to borrow money on the security of his equity in the house; that he was married and had three children; and that his wife had no income of her own. He offered in evidence a statement of his fixed monthly expenses, the total of which exceeded $300.

Harold Calder corroborated the appellant's testimony that he had no income other than the salary he received from him; that the appellant owned no property other than an equity in the house where he and his family were living; and that the appellant did not own any interest in the Willys franchise which was in his name.

Section 14-2-8, U. C. A. 1943, provides:

"In case the defendant shall refuse or neglect to give such security as shall be ordered by the court, *if able so to do,* he shall be committed to the jail of the county; there to remain until he shall comply with such order, or until otherwise discharged * * * for insolvency or inability to give bond." (Italics added.)

In *State* v. *Bartholomew,* 85 Utah 94, 38 P. 2d 753, we held that under the above statute a person cannot be found

in contempt if he is not able to comply with the order of the court requiring the posting of a bond.

From a reading of the record, it is evident that at the hearing held June 18th, the appellant was of the opinion that he could not furnish a bond, but that the court thought the appellant was capable of securing a bond and that if he were incarcerated he would furnish it within a very short time. The appellant had had two illegitimate children by the same woman. Under the circumstances the determination of the trial judge to bring to the appellant a realization of his responsibilities for the children he helped bring into the world is commendable. But under the wording of Section 14-2-8, U. C. A. 1943, and the *Bartholomew* case, supra, a defendant may not be committed to jail unless he is able to furnish the security ordered by the court and refuses or neglects to do so. Nor does the statute contemplate incarceration for the purpose of coercing relatives or friends to come forth with security, if indeed such practice absent the statute were to be condoned. The bond which the court ordered the appellant to give is a bond for the due and faithful payment of the amounts ordered to be paid by him for the support of the children until they reach the age of eighteen years, a period of prolonged contingent liability for any surety. It is a matter of common knowledge that a bond of this nature is difficult to obtain. Practically, it would seem that unless the court is satisfied that the defendant owns sufficient property which could be given to and would be accepted by a surety as indemnity, the court would ordinarily have to conclude that the defendant was unable to furnish a bond. We do not mean however to exclude the possibility that a close relative such as a father or a brother might be so actuated by reason of a desire to see the offending defendant secure the payment of the basic obligation to support his offspring that he would be willing, absent any coercing by the court, to go on the bond of the son or brother as the case might be. In the instant case the appellant offered

to prove that he had contacted three professional bondsmen, three corporate bonding company representatives, and his brother, but in all instances they refused to become sureties on a bond to guarantee payments for the support of the children. Such would be the expected result of even honest and bona fide attempts to obtain a bond when a defendant cannot furnish indemnity. Thus in determining whether a defendant is able to obtain a bond the inquiry would perhaps best be directed toward determining what property the defendant possesses which could be utilized for indemnity purposes rather than toward the efforts he had made in a quest almost doomed to failure unless indemnity could be furnished. It is to be remembered that because a defendant is unable to furnish a bond, he is not thereby relieved from the obligation of supporting his children. If he is able to support them but fails to do so, he may be adjudged in contempt of court and incarcerated. The restraints on the use of contempt to compel payment of money for the support of the children are not so drastic as those on the use of contempt to compel the giving of security for the assurance of the payments. While a father may not be adjudged in contempt for failure to pay decreed support money if he has been unable to do so, the trial court has wide latitude in determining whether the father possessed that ability.

The court made a finding of fact that the appellant was able but wilfully refused to furnish a bond, and consequently was in contempt of court. We are not apprised whether this finding was based upon a conclusion of the court that the appellant had sufficient property to indemnify a surety because the extent of the property which the trial court concluded that the appellant owned is not made clear in its findings of fact. Both the appellant and his brother testified that the appellant had no ownership in the former's automobile business, but was an employee of his brother. However, the court found in its finding of fact number four:

"That the defendant has in his name a franchise for a Willys Automobile Agency, and said automobile agency is being operated at Bountiful, Utah; that the defendant and his brother, Harold Calder, are closely associated together in the operation of said Willys Automobile Agency, as well as the operation of the Buick, Pontiac and G. M. C. Truck franchise held in the name of Harold Calder; * * *"

Given their normal meaning, the words "associated together" employed by the court indicate that the court concluded that the appellant had some ownership in the automobile business and was not merely an employee since an employer-employee relationship cannot properly be termed an association. Because the basis for the finding that the defendant was able to furnish a bond does not clearly appear, the judgment of contempt must be reversed and the case remanded to the lower court with instructions to clarify its finding in this regard. But as heretofore stated, unless the court is satisfied that the appellant owns sufficient property with which to indemnify a surety the court would have to conclude that the defendant was unable to furnish a bond unless, of course, some one should independently of coercion volunteer to furnish one. We express no opinion whether the court would be justified in concluding that the appellant was able to furnish a bond if it found that he owned an interest in his brother's automobile business.

It is not necessary as contended by the appellant that the lower court make a finding of fact showing the appellant's obligations and indebtedness. The court made findings that the appellant was capable of earning $300 per month and that a reasonable sum for him to pay for the support of the children was $200 per child for the first year following birth and $150 yearly thereafter for 17 years. In determining that the amounts adjudged were reasonable, the trial judge took into consideration the appellant's income and his expenses inasmuch as the record reveals that the court after examining the appellant's list of monthly expenses was of the opinion that by proper budget-

ing the appellant could pay $30 per month for the support of the two children.

The order of the court committing the appellant to jail is reversed and the case is remanded to the lower court with instructions to grant the appellant's motion to present evidence as to his inability to obtain a bond.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (concurring with the result).

I think the trial court erred in refusing to hear defendant on the question as to whether he was able to furnish security. But I am not prepared to hold that the statute does not contemplate incarceration for the purpose of coercing the defendant to make an honest effort to procure security. Neither am I prepared to hold that unless the court is satisfied that the defendant owns sufficient property which would be accepted by a surety in the business of furnishing security as sufficient indemnity to induce it to furnish a bond, then the court must conclude that the defendant is unable to give such security where defendant's interests and desires are both subserved by not giving security. Under such circumstances a man may be a substantial person in the business world with plenty of friends, business associates or wealthy relatives who would trust him and furnish a bond for him if they thought that thereby they would be doing him a favor, but who would refuse to furnish him security if they knew that it would not benefit him by doing so. Under these circumstances there is no incentive for either defendant or his friends to furnish security. In such a case I think the court should be able to incarcerate the defendant for a sufficient time to induce him to make an honest effort to convince his associates that it would be a favor to him to come to his rescue. Otherwise, the provision requiring security is practically a nullity. There is nothing in the wording of the statute which in-

dicates such could not be done and there is certainly nothing in the case of *State* v. *Bartholomew,* 85 Utah 94, and 38 P. 2d 753, cited in the prevailing opinion, which holds anything more than that the court must make findings of fact to the effect that the defendant was not able to furnish a bond.

The fact that the case should be reversed on the ground that the court erred in refusing to allow a defendant a hearing on the question as to whether he was able to furnish security, does not mean that the court must take the defendant's evidence at its face value and make its findings in accordance therewith.

While defendant was entitled to a hearing, his evidence might be of great weight or have little or no convincing effect on the court depending on the surrounding facts and circumstances. In evaluating defendant's evidence on this question, we must keep in mind that defendant is in court for the purpose of avoiding payment of the meagor statutory support for his illegitimate offspring and is probably willing to go to almost any length to accomplish this purpose. Under such circumstances his testimony as well as the testimony of partisan friends and relatives is generally entitled to little weight. Usually in such cases the court would be well within the bounds of reason to disregard the testimony of such persons and decide the question on the general circumstances of the case.

Under section 14-2-8, U. C. A. 1943, the court can incarcerate the defendant for failure to furnish security only if he is "able so to do." Actions of this kind are made necessary only because the father refuses to make any effort to support his offspring. Few such defendants would be unable to furnish security if the alternative were incarceration and probably no defendant will ever furnish such security in the future under the limitations placed on such coercive measures in the prevailing opinion. Thus that provision of the statute becomes a nullity. For the defend-

ant will not furnish security in a case of this kind even though he could if he wanted to, as long as he is assured that the court can do nothing about it.

I think the problem is one of what the court could reasonably find from the evidence in view of the facts and circumstances. And if after a hearing of all the evidence and a consideration of all the facts and circumstances the court could reasonably conclude that the defendant is able to furnish security, even though he and his friends insist that he is not and all the direct evidence is to that effect, then the court would be justified in making such a finding and committing him to jail if he fails to comply with such order. I fully recognize that in this kind of a case, as in every other case where the court is called upon to find the facts, there is a possibility that such finding may be incorrect. But this should not prevent the court from so finding if the evidence were such as to show that ordinarily under such facts and circumstances if it were a question of furnishing security or going to jail, security would be furnished. This seems to me to be the test which the court should apply to this kind of case. Otherwise the statute requiring security becomes useless.